No. A068857. First Dist., Div. Two. Apr. 11, 1996.]

LOUIS P. CAMPANELLI, Plaintiff and Appellant, v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA et al.,
Defendants and Appellants.

574

COUNSEL

Joseph L. Alioto and Lawrence Alioto for Plaintiff and Appellant.

James E. Holst, John F. Lundberg and Jeffrey A. Blair for Defendants and Appellants.

OPINION

SMITH, Acting P. J.—Appellant Louis P. Campanelli appeals from a judgment in favor of defendants-respondents, The Regents of University of California (The Regents), Robert L. Bockrath and Daniel Boggan, after the court sustained respondents' demurrer without leave to amend in his action for defamation. We agree with the trial court that the alleged defamatory remarks were nonactionable statements of opinion, and affirm.

BACKGROUND

As this case comes before us after the sustaining of a demurrer, we are guided by the following principles: " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] . . .' Further, we give the complaint a

reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] . . . And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.]" (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) We summarize the allegations of the complaint:

Campanelli became head basketball coach at the University of California at Berkeley (Cal) in 1985. Bockrath, who was athletic director at Cal, traveled with the team on a road trip to Arizona in February 1993. Following two difficult losses, Bockrath overheard "a frustrated and angry Campanelli address sharp criticism to the players in the locker room." On February 8, Bockrath met with Cal's vice-chancellor, defendant Boggan, and Chancellor Tien, recommending that Campanelli be terminated. Later the same day both defendants met with all but two of the team's players and learned that seven were threatening to transfer to other schools unless Campanelli was fired. That afternoon, Bockrath called Campanelli into his office and fired him. The contract between Cal and Campanelli permitted Cal to terminate his employment at any time without cause.

Campanelli's firing received "wide coverage in local and national press, radio and television." On or about February 15, 1993, Boggan gave an interview to C.W. Nevius of the San Francisco Chronicle (Chronicle). The article, which is attached as an exhibit to the complaint, states that "Jason Kidd's father felt that former Cal basketball coach Lou Campanelli was putting so much pressure on his son he was making him physically ill." (Nevius, *Cal Grew Weary of Lou's Tirades*, S.F Chronicle (Feb. 16, 1993) p. E1.) The statement was attributed to Boggan. Although Boggan heard the statement from Kidd's father, Boggan knew the elder Kidd wished to see Campanelli replaced to the extent that he would deliberately make false statements if it would accomplish that result. Boggan's statement was false and uttered with malice and in reckless disregard for the truth. In fact, Kidd did not become physically ill at any relevant time. Any illness he may have had was not caused by Campanelli.

The same week Bockrath gave an interview to the New York Times (Times) explaining the reasons for Campanelli's termination. Recalling the coach's final tirade, Bockrath said, " 'There were things that were unwarranted and inexcusable. . . . It was so incredibly bad. I said, "Sheesh, something must be done." *The players were beaten down and in trouble psychologically.* Every other word was a four-letter one. Let me tell you, if I

hadn't made that wrong turn, I wouldn't have known the fix the team was in.' " (Italics added.)

Bockrath's allegation that Campanelli inflicted "psychological damage" on his players was false and defamatory. It was uttered with malice and in reckless disregard of the truth. Bockrath had no evidence of psychological damage to any player when he made the statement that they were "in trouble psychologically."

Campanelli seeks general and punitive damages against Boggan, Bockrath and the their employer, The Regents, as a result of the defamation.

### Procedural History

Campanelli originally filed a multicount lawsuit in federal district court, including civil rights violation (42 U.S.C. § 1983), breach of implied covenant of good faith and fair dealing, and intentional infliction of emotional distress. Campanelli's complaint was dismissed by the district court for "failure to state a claim." The court declined to exercise jurisdiction over his pendent state law claims.

Campanelli then filed the present lawsuit in San Francisco Superior Court. The court granted defendants' motion to transfer the case to Alameda County, and a petition for writ of mandate challenging that ruling was denied by this court. After the parties stipulated that the federal civil rights cause of action would not be pursued and one demurrer was sustained with leave to amend, Campanelli filed the "amended complaint" now before us. This complaint sets forth two counts of defamation based on the statement about Jason Kidd made by Boggan and the "in trouble psychologically" statement made by Bockrath.

The court sustained defendants' demurrer without leave to amend and this appeal followed.

### Appeal

### I

### Boggan's Statement

■ "Libel is a false and unprivileged publication by writing . . . which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injury him

in his occupation." (Civ. Code, § 45.) However, ". . . there is no such thing as a false idea" (*Gertz* v. *Robert Welch, Inc.* (1974) 418 U.S. 323, 339 [41 L.Ed.2d 789, 805, 94 S.Ct. 2997]). A publication " 'must contain a false statement of *fact*' to give rise to liability for defamation." (*Jensen* v. *Hewlett-Packard Co.* (1993) 14 Cal.App.4th 958, 970 [18 Cal.Rptr.2d 83] (*Jensen*), quoting *Gregory* v. *McDonnell Douglas Corp.* (1976) 17 Cal.3d 596, 600 [131 Cal.Rptr. 641, 552 P.2d 425] (*Gregory*); see also *Gill* v. *Hughes* (1991) 227 Cal.App.3d 1299, 1309 [278 Cal.Rptr. 306].) Even if they are objectively unjustified or made in bad faith, publications which are statements of *opinion* rather than fact cannot form the basis for a libel action. (*Jensen, supra,* 14 Cal.App.4th at p. 971.)

■ The critical determination of whether an allegedly defamatory statement constitutes fact or opinion is a question of law for the court (*Baker* v. *Los Angeles Herald Examiner* (1986) 42 Cal.3d 254, 260 [228 Cal.Rptr. 206, 721 P.2d 87] (*Baker*); *Gregory, supra,* 17 Cal.3d at p. 601) and therefore suitable for resolution by demurrer. (E.g., *Moyer* v. *Amador Valley J. Union High School Dist.* (1990) 225 Cal.App.3d 720 [275 Cal.Rptr. 494] (*Moyer*).) If the court concludes the statement could reasonably be construed as either fact or opinion, the issue should be resolved by a jury. (*Good Government Group of Seal Beach, Inc.* v. *Superior Court* (1978) 22 Cal.3d 672, 680 [150 Cal.Rptr. 258, 586 P.2d 572] (*Good Government*).)

In drawing the distinction between opinion and fact " 'California courts have developed a "totality of the circumstances" test . . . .' [Citation.] The court must put itself in the place of an ' " 'average reader' " ' and decide the ' " 'natural and probable effect' " ' of the statement. [Citations.] The words themselves must be examined to see if they have a defamatory meaning, or if the ' " 'sense and meaning . . . fairly presumed to have been conveyed to those who read it' " ' have a defamatory meaning. [Citations.] Statements ' "cautiously phrased in terms of apparency" ' are more likely to be opinions. [Citations.] [¶] In addition to the language, the context of a statement must be examined. [Citation.] The court must 'look at the nature and full content of the communication and to the knowledge and understanding of the audience to whom the publication was directed.' [Citation.]" (*Hofmann Co.* v. *E.I. Du Pont de Nemours & Co.* (1988) 202 Cal.App.3d 390, 398 [248 Cal.Rptr. 384].)

Where, as here, the comments are made in the arena of public debate and controversy, a reviewing court has an obligation to examine the whole record in order to ensure that there is no infringement of the First Amendment guarantee of free expression. (*Moyer, supra,* 225 Cal.App.3d 720, 724;

*Milkovich* v. *Lorain Journal Co.* (1990) 497 U.S. 1, 17 [111 L.Ed.2d 1, 16-17, 110 S.Ct. 2695].)

■    Applying these principles, vice-chancellor Boggan's utterance that star player Jason Kidd's father "felt that . . . Campanelli was putting so much pressure on his son he was making him physically ill" (Nevius, *Cal Grew Weary of Lou's Tirades*, S.F Chronicle, *supra*, at p. E1) cannot be characterized as statement of fact. First, Boggan made clear that the statement did not express his own sentiment, but was something he was told by a parent. Second, the statement was not couched in terms of a factual assertion, but a *feeling* ("Jason Kidd's father *felt* . . . ." [*ibid.*, italics added]). The very word "felt" inherently connotes a subjective judgment.

As indicated, context can also be a major determinant of whether an alleged defamatory statement constitutes fact or opinion. (*Grillo* v. *Smith* (1983) 144 Cal.App.3d 868, 875 [193 Cal.Rptr. 414]; *Good Government*, *supra*, 22 Cal.3d 672, 680.) "Thus, where potentially defamatory statements are published in a public debate, a heated labor dispute, or in another setting in which the audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole, language which generally might be considered as statements of fact may well assume the character of statements of opinion." (*Gregory*, *supra*, 17 Cal.3d 594, 601.)

Throughout the Chronicle article, Boggan describes his concern that Campanelli's tirades were "tear[ing] [the] kids down." (Nevius, *Cal Grew Weary of Lou's Tirades*, S.F Chronicle, *supra*, at p. E1.) Even though Kidd tried to stay out of it, "[he] seemed to be having problems." (*Ibid.*) Cal player Brian Hendrick was quoted as saying, "You kind of numb yourself to it . . . but lately it came on a more consistent basis. It was happening after every loss, so many personal blows." Boggan recalled that three of the parents had called to complain about Campanelli and that Kidd's father was "watching his son get sick because he couldn't stand the pressure the coach was putting on him."[1] Examined against the charged atmosphere surrounding Campanelli's firing and the highly publicized facts set forth in the article, the statement by the elder Kidd about what he *felt* constituted either a subjective assessment based on parent intuition or colorful hyperbole illustrative of his apprehension over Campanelli's behavior, but cannot be construed as intending to convey a verifiable assertion regarding his son's health.

---

[1]Even though the article was attached to the complaint in its entirety, none of the above quotations were alleged to be false or libelous, except Boggan's repetition of the comment by Kidd's father.

Parents are not generally thought of as experts in the medical field. A statement such as the one attributed to Kidd's father has a much different effect on the reader when made by a parent than if the same statement were uttered by a professional with some expertise in the subject matter. (See *Slaughter* v. *Friedman* (1982) 32 Cal.3d 149, 154 [185 Cal.Rptr. 244, 649 P.2d 886].) When a parent states that he feels someone or something is making his son sick, the general public would not reasonably expect the parent to be making an observation which could be proven true or false in a medical sense. Yet the objective "truth" of such a statement is exactly what Campanelli would have a jury decide. Campanelli is not entitled to a jury trial on the issue of whether Kidd's father's "feeling" about the effect of Campanelli's behavior on his son was empirically sound or medically justified.

As a matter of law, no "reasonable fact finder could conclude that the published statements imply a provably false factual assertion." (*Moyer*, *supra*, 225 Cal.App.3d 720, 724-725.)

## II

### *Bockrath's Statement*

### *Opinion or Fact*

The action against Bockrath is predicated on his statement to the Times that "The players were beaten down and in trouble psychologically . . ." which, Campanelli asserts, amounts to a false charge that he inflicted psychological damage on his players.

As with the Boggan statement, context is a crucial factor. The article attached to the complaint is entitled "Campanelli's tirade last straw for Bockrath." In it, Bockrath describes how, on the evening of a loss to Arizona State, he entered a wrong door by accident and was shocked when he overheard Campanelli's lecture to his team. Bockrath, a former football player himself, told the Times " 'I can swear with the rest,' but he found himself appalled by what he called Campanelli's 'personal attacks' on the players." Bockrath then decided that something must be done. It is at this point Bockrath states that the players were "beaten down and in trouble psychologically." The article goes on to relate Campanelli's side of it as well: " 'What you say in a locker room should be between the coach and the players,' Campanelli said Friday. 'No one else's business. I may have used some curse words . . . there's not a coach in the country who doesn't.' "

Campanelli admits that for purposes of the present action he was a public figure, and that the subject matter was highly publicized. In considering the

totality of the circumstances, the court must factor into the equation the extent to which the public is legitimately concerned with the issue discussed, that is to say, whether the matter is one of public concern. ■ "[T]he public has an interest in receiving information on issues of public importance even if the trustworthiness of the information is not absolutely certain. The First Amendment is served not only by articles and columns that purport to be definitive but by those articles that, more modestly, raise questions and prompt investigation or debate." (*Ollman* v. *Evans* (D.C. Cir. 1984, en banc) 750 F.2d 970, 983 [242 App.D.C. 301], quoted in *Baker*, *supra*, 42 Cal.3d 254, 269.) Furthermore, an employer's evaluation of his employee's performance contains an inherent degree of subjectivity, and courts should be extremely cautious before allowing such comments to become the basis of a libel action. (*Jensen*, *supra*, 14 Cal.App.4th 958, 964-965.)

■ In light of the nature of the controversy and the overall tenor of the article, we cannot conclude the Bockrath statement was intended to be a factual assertion. Bockrath was not seriously maintaining that Cal's players had suffered "psychological damage" in any scientific, verifiable sense. Instead, the phrase "in trouble psychologically" was an emphatic way of expressing Bockrath's central theme that he thought the players felt "beaten down" as a result of Campanelli's harsh methods. The totality of the remarks and the background against which they were made dispel the notion that Bockrath's comment was imbued with the meaning which Campanelli would ascribe to it, i.e., that Cal's players had suffered measurable damage to their psyches, which could be causally attributed to Campanelli. Instead, Bockrath's statement was of the kind typically generated in a spirited dispute between two divergent viewpoints—in short, nonactionable opinion.

### Truth as a Defense

In his pleading, Campanelli admits that he was a "strict disciplinarian" who exhibited an "emotional outburst" in which he leveled "sharp criticism" at the players in a "fit of anger." The complaint itself alleges that, at the time of his termination, seven of Cal's players had threatened to leave the team if Campanelli stayed on. In the articles which Campanelli attaches to his complaint, Bockrath calls his outburst "profane and abusive," and Cal player Hendricks is quoted as saying Campanelli's tirades included "so many personal blows" against which the players tried to "numb" themselves. Campanelli's complaint does not deny the truth of any of these statements.[2]

■ Truth, of course, is an absolute defense to any libel action. (*Gill* v. *Hughes*, *supra*, 227 Cal.App.3d 1299, 1309.) In order to establish the

---

[2]Although he alleges that the Times interview was the inspiration for a Washington Post "op-ed" piece calling Campanelli "an abusive bully" who "cursed his players incessantly" and

defense, the defendant need not prove the literal truth of the allegedly libelous accusation, so long as the imputation is substantially true so as to justify the "gist or sting" of the remark. (*Emde* v. *San Joaquin County etc. Council* (1943) 23 Cal.2d 146, 160 [143 P.2d 20, 150 A.L.R. 916].)

■ Campanelli's own allegations, coupled with assertions of fact which he attached to his complaint and incorporated therein, show that he engaged in temper tantrums directed at his players which included verbally abusive and profane remarks of a personal nature, to the extent that seven members of the team wanted to transfer unless he was fired. Through these concessions, Campanelli has admitted the essential accuracy of Bockrath's statement that the players were "in trouble psychologically." For this additional reason, the demurrer to the cause of action against Bockrath was properly sustained without leave to amend.

Our conclusion that the trial court's ruling on the demurrer was correct renders it unnecessary to reach Campanelli's second contention that the San Francisco Superior Court erred in transferring the case to Alameda County. On these allegations, defendants would be entitled to judgment in any court of competent jurisdiction in this state.

DISPOSITION

The judgment is affirmed.

Phelan, J., and Haerle, J., concurred.

---

"treated his players shabbily," Campanelli neither denied these charges, nor did he name either the Post or the author of the article as defendants in this action.