[No. A080411. First Dist., Div. Three. May 26, 1999.]

DONALD C. SMITH et al., Plaintiffs and Appellants, v.
RON MALDONADO et al., Defendants and Respondents.

## COUNSEL

Albert E. Polonsky for Plaintiffs and Appellants.

Franchetti & Rystsrom, Michael Franchetti and Tiffany Rystrom for Defendants and Respondents.

## OPINION

**McGUINESS, P. J.**—Can a defamatory innuendo be created by the act of "highlighting" or visibly emphasizing certain selected passages in a concededly truthful and accurate newspaper article? May an action for defamation lie against persons who copy and disseminate such a truthful newspaper article, after having themselves highlighted one portion of the article that mentions other individuals in a context or manner that inferentially associates those individuals with alleged criminal activity? The issue is apparently one of first impression.

In this case, appellants Donald C. Smith and Thomas G. Atwood contend they were libeled when respondents Ron and Helen Maldonado distributed copies of an entirely truthful newspaper article describing the indictment of appellants' former attorney on charges of attempting to bribe a state legislator on appellants' behalf, with the single paragraph referring to appellants by name intentionally highlighted by respondents. We affirm the trial court's grant of summary judgment in respondents' favor.

### FACTUAL AND PROCEDURAL BACKGROUND

In February 1993, the voters of Colma narrowly approved a proposed ordinance to permit the operation of a card room, pursuant to Business and Professions Code former sections 19819 and 19819.5.[1] Despite the voter approval given to the proposal, the card room remained a controversial issue in Colma. After the Colma Town Council (Town Council) adopted an ordinance establishing the procedures for authorizing and regulating card

---

[1]Colma is a tiny town just south of San Francisco. The vote on the card room proposition was 122 to 114.

rooms, four groups, including appellants, applied for a card room permit. Appellants obtained legal counsel (hereinafter, appellants' former attorney) and pursued their goal of obtaining a permit by appearing before the Town Council and other forums. The decision on which of the contending vendors would be selected generated considerable public interest and debate in Colma.

In March 1994, Colma awarded the permit to operate a card room to a group called "Lucky Chances," selecting it over appellants and the other applicants. Appellants were designated the second ranked applicants, who would succeed to the opportunity to be awarded the permit if the Lucky Chances group failed to meet specified deadlines for obtaining a conditional use permit and state gaming registration. When Lucky Chances failed to obtain the required state gaming registration by December 31, 1994, appellants asserted their claim to apply for the permit. At public meetings of the Town Council, appellants' former attorney argued on their behalf that the Town Council should rescind its award of the permit to the Lucky Chances card club and grant the permit to appellants. These efforts were reported in the local news media. When appellants were not given the permit, they filed a lawsuit against Colma in January 1995.

Respondents were residents of Colma who participated in Colma local governmental issues, supported the enactment of the card room ordinance, and closely followed the permit application process with great interest. They joined the Colma Citizens' Advisory Council, a group of Colma residents interested in the card club who supported Lucky Chances' attempt to secure the Colma card room franchise. In December 1995, a different group of local citizens qualified an initiative for the ballot to repeal the card room ordinance. Because of their strong support for the card room and Lucky Chances' application, respondents took an active role in opposing the initiative. After much public debate, the initiative was defeated in May 1995.

Appellants continued to oppose Lucky Chances' application for the necessary permits, and regularly appeared at Town Council meetings to contend they were entitled to the card room permit themselves. Respondents publicly opposed appellants' contentions. After Colma granted a use permit to Lucky Chances, appellants filed two further lawsuits against Colma opposing the Town Council's action. In these lawsuits, they were represented by their current counsel, who succeeded appellants' former attorney in representing them in July 1995.

In July 1996, appellants' former attorney was indicted on criminal charges of illegally attempting to influence a California legislator on behalf of

appellants in their attempt to gain an exclusive card room franchise in Colma, by allegedly seeking the legislator's assistance in preventing Lucky Chances from obtaining the requisite state gaming registration. A newspaper article accurately reporting these facts was published by the Los Angeles Times on July 6, 1996.

On July 7, 1996, respondents obtained a copy of the Los Angeles Times article. They made copies of the article and sent them to 35 other Colma residents. Respondents did not rearrange, edit, or change any words in the article, and did not add any written comments of their own. Instead, they "highlighted" a single paragraph mentioning appellants by name and distributed the entire article otherwise unchanged.[2] Referring to the Attorney General's investigation of and "carefully orchestrated sting operation" against appellants' former attorney, the entire highlighted paragraph read: "The target was [appellants' former attorney], a politically connected attorney representing restaurateur Don Smith and golf course owner Thomas Atwood. The men were seeking a potentially lucrative franchise to operate a card room in Colma, a tiny community south of San Francisco."

On July 25, 1996, appellants' current counsel sent respondents a letter stating that their highlighting of the newspaper article had insinuated that appellants themselves were involved in the allegedly illegal activities of appellants' former attorney, and demanding an apology and public retraction. Because they believed the newspaper article was true and they had done no wrong in simply redistributing it, respondents refused appellants' demand for a retraction.

On August 14, 1996, appellants filed their libel complaint, alleging that by circulating the newspaper clipping with the paragraph mentioning appellants highlighted, respondents had insinuated that appellants were involved in the alleged illegal activities of appellants' former attorney discussed in the

---

[2]Both parties describe respondents' act as "highlighting" the subject paragraph of the newspaper article. The parties have not defined the words "highlight" or "highlighting" in their briefs. Webster's Third New International Dictionary defines the verb "to highlight" as, among other things, "to illuminate with vivid distinctness" or "throw a strong light upon"; "to center attention upon" or "cause to loom large in importance or urgency"; or to "emphasize" or "stress." The dictionary defines the noun "highlighting" as "the act or effect of casting a highlight upon or giving prominence to something." (Webster's New Internat. Dict. (3d ed. 1970) p. 1068.)

The record does not include a precise description of the form or manner in which respondents "highlighted" the subject newspaper article in this case. From statements made by appellants' counsel at oral argument, we gather respondents used a yellow-colored marking pen to mark or color over the printed words in the subject paragraph of the newspaper article in order to draw the readers' attention to that passage. This is the sense in which we will interpret the parties' use of the term "highlight" in this case.

article. After the trial court sustained respondents' demurrer with leave to amend, appellants filed a first amended complaint that contained a somewhat more detailed statement of facts, again alleged that respondents had intentionally and maliciously insinuated that appellants were involved in the alleged bribery attempt by appellants' former attorney, and added an allegation that at the time of the allegedly defamatory insinuations, the subject of the article was no longer a matter of public concern to the citizens of Colma. Respondents immediately filed a second demurrer. The trial court overruled the demurrer.

After discovery, respondents moved for summary judgment on May 30, 1997. They argued that the newspaper article was completely truthful, and respondents had done nothing more than redistribute a truthful publication with one paragraph highlighted but without any commentary, changes or editing. Thus, respondents had only published true facts, and appellants could not state a claim for libel or defamation. In addition, respondents argued that because appellants had voluntarily undertaken action seeking to influence the resolution of a public controversy, they were limited-purpose public figures. As such, appellants could not meet the higher burden of proving by clear and convincing evidence that the allegedly libelous dissemination was made with knowledge of its falsity or in reckless disregard of its truth or falsity, as required by *New York Times Co.* v. *Sullivan* (1964) 376 U.S. 254, 296 [84 S.Ct. 710, 734-735, 11 L.Ed.2d 686, 95 A.L.R.2d 1412]. In opposition, appellants admitted the Los Angeles Times newspaper article was true, but argued that respondents' highlighting of the one paragraph mentioning appellants "created the impression that [appellants] were involved in the allegedly illegal activities of [appellants' former attorney]."

The trial court granted the motion for summary judgment, setting out its reasons in a lengthy statement of decision. Agreeing with respondents' arguments, the trial court determined on the basis of undisputed material facts that the highlighting of one paragraph of the otherwise completely true and accurate newspaper article did not change the truthfulness of the article or constitute an independent editorial comment; any allegedly libelous innuendo was based entirely on an accurate statement of true facts and was therefore not defamatory; appellants were limited-purpose public figures; the subject issue involved in the alleged libel was one of public controversy; and appellants could not carry their burden of proving by clear and convincing evidence that respondents disseminated the newspaper article with knowledge of its falsity or reckless disregard for its truth or falsity. This appeal followed.

## STANDARD OF REVIEW

Any party may move for summary judgment in any action or proceeding by contending that the action has no merit, or there is no defense to the

action. (Code Civ. Proc., § 437c, subd. (a).) Code of Civil Procedure section 437c, subdivision (c), *requires* a trial court to grant summary judgment if all the papers and affidavits submitted, together with "all inferences reasonably deducible from the evidence" and uncontradicted by other inferences or evidence, show that "there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . ." (Code Civ. Proc., § 437c, subd. (c); 6 Witkin, Cal. Procedure (4th ed. 1997) Proceedings Without Trial, § 217, p. 629.)

■ A moving defendant may meet the burden of showing that a cause of action has no merit by proving either that (1) one or more elements of the cause of action cannot be established, or (2) there is a complete defense to that cause of action. Once that burden is met, the burden *shifts* to the plaintiff to show the existence of a triable issue of one or more material facts with respect to that cause of action or defense. (Code Civ. Proc., § 437c, subd. (o)(2); *Sangster* v. *Paetkau* (1998) 68 Cal.App.4th 151, 161-163 [80 Cal.Rptr.2d 66]; *Saldana* v. *Globe-Weis Systems Co.* (1991) 233 Cal.App.3d 1505, 1513-1515 [285 Cal.Rptr. 385].) Because summary judgment is a drastic procedure that deprives the losing party of a trial on the merits, a defendant moving for summary judgment must conclusively negate the necessary elements of the plaintiff's case or demonstrate that under no hypothesis is there a material issue of fact. (*Miller* v. *Bechtel Corp.* (1983) 33 Cal.3d 868, 874 [191 Cal.Rptr. 619, 663 P.2d 177]; *Kulesa* v. *Castleberry* (1996) 47 Cal.App.4th 103, 112 [54 Cal.Rptr.2d 669]; *WYDA Associates* v. *Merner* (1996) 42 Cal.App.4th 1702, 1709 [50 Cal.Rptr.2d 323]; *Shively* v. *Dye Creek Cattle Co.* (1994) 29 Cal.App.4th 1620, 1627 [35 Cal.Rptr.2d 238]; *Gigax* v. *Ralston Purina Co.* (1982) 136 Cal.App.3d 591, 596-597 [186 Cal.Rptr. 395].)

■ On appeal, we review the trial court's decision to grant summary judgment de novo, on the basis of our independent examination of the evidence and determination of its effect as a matter of law. (*Sangster* v. *Paetkau, supra,* 68 Cal.App.4th at p. 163; *Villa* v. *McFerren* (1995) 35 Cal.App.4th 733, 741 [41 Cal.Rptr.2d 719]; *Union Bank* v. *Superior Court* (1995) 31 Cal.App.4th 573, 579 [37 Cal.Rptr.2d 653]; *Jambazian* v. *Borden* (1994) 25 Cal.App.4th 836, 843-844 [30 Cal.Rptr.2d 768]; 6 Witkin, Cal. Procedure, *supra,* Proceedings Without Trial, § 235, pp. 646-647.) We are not bound by the trial court's stated reasons or rationale, and review the summary judgment without deference to its determination of questions of law. (*Sangster* v. *Paetkau, supra,* 68 Cal.App.4th at p. 163; *Transamerica Ins. Co.* v. *Superior Court* (1994) 29 Cal.App.4th 1705, 1713-1714 [35 Cal.Rptr.2d 259].)

## DISCUSSION

The threshold and, indeed, dispositive question on this appeal is whether any defamatory communication was made by respondents when they sent copies of the Los Angeles Times newspaper article to individual members of the public after highlighting the single paragraph mentioning appellants in connection with the alleged bribery by appellants' former attorney. In order to answer this question, we must decide whether a defamatory innuendo can be created by the action of highlighting or visibly emphasizing certain selected passages in a concededly truthful newspaper article, without otherwise editing, adding to or subtracting from the original content or substance of the article. As mentioned in the introduction to this opinion, this appears to be a question of first impression. Under the facts presented, we conclude that the highlighting of the otherwise entirely truthful paragraph did not create a defamatory innuendo.

### ELEMENTS OF DEFAMATION

Defamation is an invasion of the interest in reputation. The tort involves the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage. (Civ. Code, §§ 45, 46; 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts § 471, pp. 557-558.)[3] Publication means communication to some third person who understands the defamatory meaning of the statement and its application to the person to whom reference is made. Publication need not be to the "public" at large; communication to a single individual is sufficient. (*Cunningham* v. *Simpson* (1969) 1 Cal.3d 301, 306 [81 Cal.Rptr. 855, 461 P.2d 39]; 5 Witkin, Summary of Cal. Law, *supra*, Torts, §§ 471, 476, pp. 557-558, 560-561.) Reprinting or recirculating a libelous writing has the same effect as an original publication. (*Gilman* v. *McClatchy* (1896) 111 Cal. 606, 612 [44 P. 241]; Rest.2d Torts, §§ 576, 578; 5 Witkin, Summary of Cal. Law, *supra*, Torts, § 478, pp. 562-563.)

Where the words or other matters which are the subject of a defamation action are of ambiguous meaning, or innocent on their face and defamatory only in the light of extrinsic circumstances, the plaintiff must plead and prove that as used, the words had a particular meaning, or "innuendo," which makes them defamatory. (*Washer* v. *Bank of America* (1943) 21 Cal.2d 822, 828-829 [136 P.2d 297, 155 A.L.R. 1338], overruled

---

[3]The statutory definition of libel is found in Civil Code section 45: "Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation."

on other grounds, *MacLeod* v. *Tribune Publishing Co.* (1959) 52 Cal.2d 536, 551 [343 P.2d 36]; Rest.2d Torts, § 563, com. f, at p. 164; 5 Witkin, Summary of Cal. Law, *supra,* Torts, § 493, p. 580.)[4] Where the language at issue is ambiguous, the plaintiff must also allege the extrinsic circumstances which show the third person reasonably understood it in its derogatory sense (the inducement). (*Grand* v. *Dreyfus* (1898) 122 Cal. 58, 62 [54 P. 389]; *Peabody* v. *Barham* (1942) 52 Cal.App.2d 581, 585 [126 P.2d 668], overruled on other grounds, *MacLeod* v. *Tribune Publishing Co., supra,* 52 Cal.2d at p. 551; Rest.2d Torts, § 563, com. f, at p. 164; 5 Witkin, Summary of Cal. Law, *supra,* Torts, § 493, pp. 580-581.)

 In all cases of alleged defamation, whether libel or slander, the truth of the offensive statements or communication is a complete defense against civil liability, regardless of bad faith or malicious purpose. (*Campanelli* v. *Regents of University of California* (1996) 44 Cal.App.4th 572, 581-582 [51 Cal.Rptr.2d 891]; *Schmidt* v. *Foundation Health* (1995) 35 Cal.App.4th 1702, 1715 [42 Cal.Rptr.2d 172]; *Ellenberger* v. *Espinosa* (1994) 30 Cal.App.4th 943, 953 [36 Cal.Rptr.2d 360]; *Francis* v. *Dun & Bradstreet, Inc.* (1992) 3 Cal.App.4th 535, 540 [4 Cal.Rptr.2d 361]; *Gill* v. *Hughes* (1991) 227 Cal.App.3d 1299, 1309 [278 Cal.Rptr. 306]; *Swaffield* v. *Universal Ecsco Corp.* (1969) 271 Cal.App.2d 147, 164 [76 Cal.Rptr. 680]; 5 Witkin, Summary of Cal. Law, *supra,* Torts, § 494, p. 583.) The defendant must "justify," or show the truth of the statements.[5] If the statements are not defamatory on their face but are capable of a defamatory meaning imputed by innuendo, the defendant must demonstrate the truth of the statements in that sense in which the plaintiff's innuendo explains them. However, the defendant need not justify the literal truth of every word of the allegedly defamatory matter. It is sufficient if the defendant proves true the *substance*

---

[4]"The office of an innuendo is to declare what the words meant to those to whom they were published. When the words themselves, under any circumstances, would convey to those who read or hear them a meaning within the statutory definitions [of libel and slander], there is no occasion for the pleading of an innuendo. Conversely, if the words under no circumstances could convey a defamatory meaning, then no innuendo can make them defamatory. An innuendo, however, is necessary where the words used are susceptible of either a defamatory or an innocent interpretation. [Citations.] And when the offending language is susceptible of an innocent interpretation, it is not actionable *per se,* but, in addition to an innuendo, it is necessary for the plaintiff to allege special damages by reason of the meaning gained from the publication. [Citation.]" (*Washer* v. *Bank of America, supra,* 21 Cal.2d at p. 828.)

[5]The burden of pleading and proving truth is generally on the defendant. (*Lipman* v. *Brisbane Elementary School Dist.* (1961) 55 Cal.2d 224, 233 [11 Cal.Rptr. 97, 359 P.2d 465].) However, in an action initiated by a private person on a matter of public concern, the First Amendment requires that the plaintiff bear the burden of proving falsity. (*Philadelphia Newspapers, Inc.* v. *Hepps* (1986) 475 U.S. 767 [106 S.Ct. 1558, 89 L.Ed.2d 783]; Rest.2d Torts, § 613, com. j, p. 310; 5 Witkin, Summary of Cal. Law, *supra,* Torts, § 496, p. 584.) In this case, appellants admit that the facts reported in the Los Angeles Times article were true, and do not contend that the article *itself* contained any defamatory innuendo.

of the charge, irrespective of slight inaccuracy in the details, "so long as the imputation is substantially true so as to justify the 'gist or sting' of the remark." (*Campanelli* v. *Regents of University of California, supra,* 44 Cal.App.4th at pp. 581-582; *Gantry Constr. Co.* v. *American Pipe & Const. Co.* (1975) 49 Cal.App.3d 186, 194 [122 Cal.Rptr. 834]; *Swaffield* v. *Universal Ecsco Corp., supra,* 271 Cal.App.2d 147, 164; *Pyper* v. *Jennings* (1920) 47 Cal.App. 623, 628 [191 P. 565]; Rest.2d Torts, § 581A, com. f, p. 234; 5 Witkin, Summary of Cal. Law, *supra,* Torts, § 495, pp. 583-584.)

■ The question whether a statement is reasonably susceptible to a defamatory interpretation is a question of law for the trial court. Only once the court has determined that a statement is reasonably susceptible to such a defamatory interpretation does it become a question for the trier of fact whether or not it was so understood. (*Maidman* v. *Jewish Publications, Inc.* (1960) 54 Cal.2d 643, 651 [7 Cal.Rptr. 617, 355 P.2d 265, 87 A.L.R.2d 439], overruled on other grounds, *Brown* v. *Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 733 [257 Cal.Rptr. 708, 771 P.2d 406]; *Kahn* v. *Bower* (1991) 232 Cal.App.3d 1599, 1609 [284 Cal.Rptr. 244].)

### Can Emphasis Alone Create a Defamatory Innuendo?

■ In this case, appellants do not contend that respondents republished defamatory material. They concede that the Los Angeles Times newspaper article was truthful as a whole, the specific information in the highlighted paragraph was itself accurate, and respondents disseminated the entire article without cutting any part or separating the highlighted section from the whole. Neither do appellants contend that respondents added any words or written commentary to the article, or in any way edited, altered or rearranged its contents. Instead, they argue that simply by highlighting the concededly truthful paragraph in the factually accurate news article, respondents created a defamatory innuendo that appellants were involved in the allegedly illegal activities of their former attorney as described in the article.[6]

Thus, this is not a case where an originally accurate and truthful statement of fact has been edited or revised to create a false impression. Respondents did not edit, rearrange or revise the article in any way before disseminating it. Neither did they add their own words to provide a suggestive commentary to the otherwise accurate facts set out in the newspaper account. By itself, highlighting is nothing more nor less than emphasis. It does not add any

---

[6]As appellants state in their opening brief on appeal: "This is a matter of first impression. No appellate court has determined whether the highlighting of otherwise true facts in a newspaper article and the distribution of the highlighted article can create a false insinuation that would support a claim for libel."

commentary, analysis, rhetoric, opinion, or anything else of substance to the statement that is highlighted; it merely emphasizes all or part of that statement. For our purposes, moreover, there was no difference between the specific means respondents used in this case to highlight the subject statements and any other simple mode of emphasis. Respondents could as easily have underlined the paragraph with a pencil or a red pen; the effect would have been exactly the same. In either case, the intention and the result would simply have been to draw attention to the emphasized text.[7] In effect, appellants would have us hold that simply by *emphasizing* or stressing a truthful statement of fact in republishing or recommunicating that statement, a person may expose himself or herself to liability for defamation if some third person may conceivably understand such emphasis as having a defamatory innuendo.

We are not prepared to extend the reach of the tort of defamation to such an extent. Truth is, of course, an *absolute* defense to any libel action. (*Campanelli* v. *Regents of University of California, supra,* 44 Cal.App.4th at p. 581; *Gill* v. *Hughes, supra,* 227 Cal.App.3d at p. 1309.) The truth of a fact is not altered by stating it forcefully. By the same token, a truthful and accurate statement of fact is not rendered defamatory simply by *repeating* it with greater emphasis. If a statement is true, shouting it from the rooftops or publishing it everywhere on giant billboards cannot change its essential truth, as long as the statement itself remains unchanged. In short, no matter how emphatically it is stated or repeated, the truth is still the truth.[8]

The record shows the only thing respondents did in this case was to emphasize the truth. Any conceivable implication that appellants were involved in their former attorney's alleged criminality was necessarily drawn from the true facts stated in the entire newspaper article. Respondents' mere highlighting of one part of that article did not add to or detract from the substance of the newspaper article, which they disseminated in its entirety without any editing or added verbal commentary. If the newspaper article itself cannot be interpreted as creating a defamatory innuendo—and appellants do not contend that it can be—then it necessarily follows that the

[7]By analogy, if this were a case of alleged slander, the same effect could have been achieved by speaking the subject statement with increased vocal emphasis, more slowly and distinctly, or more loudly. In the case of any of these examples, assuming no other comments were added, the statement would simply amount to a republication of an otherwise truthful statement *with added emphasis.*

[8]Of course, we are not dealing here with a case of alleged invasion of privacy. Issues of the constitutional right to privacy are very different from those addressed by the tort of defamation. (Cal. Const., art. I, § 1; *White* v. *Davis* (1975) 13 Cal.3d 757, 766-776 [120.Cal.Rptr. 94, 533 P.2d 222]; *Loder* v. *Municipal Court* (1976) 17 Cal.3d 859, 868-877 [132.Cal.Rptr. 464, 553 P.2d 624]; *Central Valley Chap. 7th Step Foundation* v. *Younger* (1979) 95 Cal.App.3d 212, 234-236 [157 Cal.Rptr. 117].)

highlighting of a single paragraph out of that article could not result in such an innuendo. (*Washer* v. *Bank of America, supra,* 21 Cal.2d at pp. 828-829.)

Any other result would have a deleterious impact on all forms of written and oral speech. If we were to accept appellants' contention, the unavoidable effect would be to discourage the dissemination of accurate news reports. This result would raise obvious First Amendment concerns. We need not confine our consideration to the republication of newspaper articles, moreover. Writers and public speakers in general would have to take care they did not place the "wrong" emphasis on truthful, accurate statements of fact. The resulting chilling effect on the free flow of ideas and information would be substantial.

Moreover, if a plaintiff could plead defamation based on an alleged innuendo derived solely from highlighting a true statement of fact, the door would be open to all kinds of subjective considerations of what does or does not constitute undue emphasis. Thus, in any defamation case the court would be forced to consider the particular type of emphasis used, and its effect on the person or persons to whom the material was published. Courts in libel cases would have to consider the distinctive effects of underlining, italicization, typeface, and the size, style or color of print used; courts in slander cases would be compelled to analyze the effects of variations in vocal tone, inflection, timbre, volume and pitch. If highlighting or emphasis *alone* could be found to create a defamatory innuendo as a matter of law, courts would also have to analyze the subjective intent of the person doing the highlighting. Otherwise, the highlighter could be liable if a person to whom the highlighted material was published misinterpreted it by giving the highlighting a falsely defamatory meaning, even if the highlighter had no such defamatory intent. What was he or she trying to communicate by highlighting or emphasizing and then publishing the material? If the added emphasis simply communicates "importance," how or why was the emphasized material "important"? The substantive and procedural difficulties posed to courts and litigants by such subjective analysis would be daunting. Even without considering the manifest constitutional ramifications of expanding the tort of defamation to include emphasis or highlighting of otherwise truthful material, strong considerations of public policy would preclude such an outcome.

Appellants have not cited any case authority holding that highlighting or emphasizing one portion of an otherwise accurate and truthful newspaper article can create a defamatory innuendo, and we have not found any authority for this position in our own research. To the contrary, the defamation cases discussing innuendo hold that where the words of the published statement at issue "under no circumstances could convey a defamatory

meaning, then no innuendo can make them defamatory. . . ." (*Washer* v. *Bank of America, supra,* 21 Cal.2d at p. 828.) Because, by definition, an accurate and unambiguous statement of true facts cannot under any circumstances convey a defamatory meaning, no innuendo can make such a statement defamatory *as a matter of law. (Ibid.)*

The cases which appellants do cite are of no assistance to their position. In *Kapellas* v. *Kofman* (1969) 1 Cal.3d 20 [81 Cal.Rptr. 360, 459 P.2d 912], a newspaper published editorials opposing the plaintiff's candidacy for city council, citing the fact three of her six minor children had been charged with various juvenile offenses and arguing her time would be better spent with her children. In reversing a judgment of dismissal entered on a demurrer, the Supreme Court held that the true facts reported in the editorial, in combination with the conclusions and recommendations drawn by the editorial from those facts, were "reasonably susceptible" to the innuendo that the plaintiff "was an unsuitable mother and unqualified for city office." (*Id.* at pp. 26-27, 33-34.)[9]

*Kapellas* is completely distinguishable from this case. The editorial at issue in *Kapellas* did not simply report true facts on the public record; it *used* the facts to draw arguably defamatory inferences and implications about the plaintiff. The defendant editor, who was solely responsible for the written editorial at issue, rearranged and rephrased the facts for the purpose of supporting the editorial argument. Thus, the defamatory innuendo in *Kapellas* arose from explicit editorial comment and rhetoric based on reported facts. By contrast, in this case respondents simply disseminated an already published newspaper article which appellants concede was accurate, truthful, and therefore not defamatory. Respondents did not comment on the facts reported in the newspaper article; they simply republished the entire article unedited aside from the addition of visual emphasis to one concededly accurate and truthful paragraph. Respondents were not responsible for *any* written statement or comment themselves, nor did they did rearrange, restate or rephrase the concededly truthful statements in the newspaper article in such a way as to create a false inference or implication. In other words, respondents did no more than republish true facts with emphasis added.

---

[9]The Supreme Court stated: "We have long recognized that false inferences or implications raised by the arrangement and phrasing of apparently non-libelous statements can be as injurious as explicit epithets; we have upheld libel actions founded on such implications. [Citations.] When the basis of a claim of libel lies in an implication flowing from the rhetoric of a publication, the allegedly damaging implication frequently cannot be connected to any one statement, or to even a few specific statements, but rather emanates from the tone of the article as a whole. In such an instance, . . . [t]he mere withdrawal of specific statements may not be adequate to purge the original implication . . . ." (*Kapellas* v. *Kofman, supra,* 1 Cal.3d at p. 33.)

Similarly distinguishable is *Maidman* v. *Jewish Publications, Inc., supra,* 54 Cal.2d 643, in which the Supreme Court reversed another judgment of dismissal in a libel case. *Maidman*, like *Kapellas*, concerned the editorial use of true facts in the context of a published rhetorical argument critical of a particular individual. The editorial, which appeared in a Jewish newspaper, accurately reported certain statements made in court by the plaintiff, a Jewish attorney, about the nature of the Jewish holiday Rosh Hashanah. The editorial expressly disagreed with the plaintiff's interpretation of the holiday, and made explicitly disparaging remarks about the plaintiff. The Supreme Court concluded that the editorial was libelous *per se* without the resort to extrinsic material because it exposed the plaintiff to contempt and ridicule on its face. (*Id.* at pp. 646-651.) The court noted in passing that the editorial could also reasonably be interpreted to insinuate defamatory comments about plaintiff in his professional capacity as a lawyer, by implication injuring him in his occupation as an attorney. (*Id.* at p. 651.)[10]

*Maidman* is distinguishable from this case for the same reasons as *Kapellas*. Key to *Maidman* was the Supreme Court's holding that "[c]omments, opinions and criticisms may be defamatory even though based upon true or privileged statements of fact. The publisher is liable unless the comments themselves are privileged." (54 Cal.2d at p. 649.) Here, there were no comments, opinions or criticisms in either the original concededly accurate and truthful newspaper article, or in respondents' republication of that article, complete and unedited. Respondents were not the authors of the original article, and they added no comments, opinions or criticisms to it. The undisputed evidence shows their only conduct was to republish and circulate the truthful article without any written comment or change other than added emphasis. Emphasis of true facts does not, by itself, create a defamatory innuendo.

More on point is the case of *Francis* v. *Dun & Bradstreet, Inc., supra,* 3 Cal.App.4th 535. In that case, the plaintiffs brought an action for defamation against a credit reporting company, arguing that because a concededly true

---

[10]The Supreme Court stated: " 'A defendant is liable for what is insinuated, as well as for what is stated explicitly.' [Citations.] 'The fact that an implied defamatory charge or insinuation leaves room for an innocent interpretation as well does not establish that the defamatory meaning does not appear from the language itself. The language used may give rise to conflicting inferences as to the meaning intended, but when it is addressed to the public at large, it is reasonable to assume that at least some of the readers will take it in its defamatory sense.' [Citation.] To accuse an attorney of deliberately misleading a court, whether this be done directly or indirectly, is obviously to injure the attorney's reputation, generally, *and* with respect to his occupation. Since the article could reasonably have been understood to make such a charge it is for the trier of fact to determine if the readers did so understand it. [Citation.]" (*Maidman* v. *Jewish Publications, Inc., supra,* 54 Cal.2d at p. 651, italics in original.)

and accurate credit report could be interpreted to imply they were not creditworthy, the credit report was therefore defamatory by innuendo. The Court of Appeal held the action barred by the defense of truth. "A credit report, even one that causes harm, is not defamatory if it is true. . . . [A] report containing facts adverse to the business can well cause problems securing credit. But one cannot sue the credit reporting agency just because the business (or people involved with the business) has had financial problems in the past. Plaintiffs' brief goes on at length about 'innuendo,' 'implication,' and 'reading the report as a whole,' but all of this discussion is irrelevant. There can be no defamation without a false statement of fact, and plaintiffs admit all the statements are true. As one court held recently (and succinctly), 'Plaintiff's admission of truth bars his defamation cause of action.' [Citation.] We wonder how plaintiffs (or their attorneys) could have ever thought they had a cause of action for defamation." (3 Cal.App.4th at p. 540.) The same could well be said in this case.

Appellants insist that *Francis* v. *Dun & Bradstreet* "would have turned out differently" if certain true but inferentially damaging facts stated in the credit report about the plaintiff had been highlighted, because it "would suggest that the person doing the highlighting was implying" the plaintiff was personally responsible for the financial problems of the company that were discussed in the credit report.[11] Appellants are wrong. Such highlighting would constitute no more than giving extra emphasis to true facts. Emphasis of the truth, by itself, cannot create a false innuendo.

We hold that the mere addition of simple emphasis to an otherwise completely accurate and truthful statement of fact cannot, *by itself*, create a defamatory innuendo. Only if an originally truthful statement of fact is *substantively changed* by (a) editing or rearranging the words of the statement, (b) removing language from the original text, (c) adding new language not found in the original text, or (d) repeating or reproducing the statement in a different surrounding context in such a way as to render it reasonably susceptible of a different meaning or interpretation than it had in its original context, may the truthful statement of fact be rendered capable of a defamatory innuendo for purposes of an action in defamation. On the basis of the undisputed evidence in the record in this case, we conclude that respondents'

---

[11]In their opening brief on appeal, appellants "submit that *Francis* [v. *Dun & Bradstreet, supra,* 3 Cal.App.4th 535] would have turned out differently if someone had taken the credit report, highlighted the fact that the plaintiff's company had filed for bankruptcy three months after he left, and then distributed the credit report further. That situation would suggest that the person doing the highlighting was implying that the plaintiff caused the bankruptcy of the company. [¶] Since there was no comment, by highlighting or other means, on the credit report disseminated in *Francis*, its ruling that there can be no defamation without a false statement of fact does not apply to this case."

republication and dissemination of the concededly truthful and accurate Los Angeles Times newspaper article, unedited and unchanged aside from the addition of highlighting to one paragraph for purposes of emphasis, was not defamatory as a matter of law. The trial court was correct in granting summary judgment in favor of respondents on this basis.[12]

DISPOSITION

The judgment is affirmed. Appellants shall pay respondents' costs on appeal.

Corrigan, J., and Walker, J., concurred.

On June 23, 1999, the opinion was modified to read as printed above.

---

[12]In view of our holding that there was no defamation as a matter of law, we need not address the issue of whether appellants were limited-purpose public figures required to prove that respondents acted with actual malice.