[No. B168913. Second Dist., Div. Five. Sept. 28, 2004.]

ALBERT HUGHES, Plaintiff and Appellant, v.
ALLEN HUGHES et al., Defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, the only parts of this opinion certified for publication are the Introduction, Factual and Procedural Background, the first paragraph under Discussion, part IV.C. and the Disposition.

**COUNSEL**

Law Offices of Michael A. Weiss and Michael A. Weiss for Plaintiff and Appellant.

Morris Polich & Purdy, Richard H. Nakamura, Michael P. West and Pamela A. Hill for Defendants and Respondents.

OPINION

MOSK, J.—

## INTRODUCTION

A Vanity Fair magazine article quoted defendant and respondent Albert Hughes, Jr.,[1] as saying, "Our dad's a pimp." A USA Today article quoted defendant and respondent Allen Hughes, Albert Jr.'s twin brother, as saying their father "dabbled in the pimptorial arts." The Hughes brothers maintained the statements were true. Their father, plaintiff and appellant Albert Hughes, Sr., sued Albert Jr. and Allen for defamation, claiming the statements were false. A jury found that the Hughes brothers did not make defamatory statements.

On appeal, Albert Sr. raises numerous claims of error, including error in the special verdict, insufficiency of the evidence, errors in the jury instructions, and errors in rulings on discovery motions and motions in limine. In the published portion of this opinion, we discuss Albert Sr.'s contention that the statement, "Our dad's a pimp," connotes a present, rather than a past, fact, and therefore Albert Jr., in order to establish truth as a defense, had to prove his father was acting as a pimp at the time the allegedly defamatory statement was made. Albert Sr. claims that the evidence of alleged pimping activity years earlier was irrelevant and was insufficient to support the defense of truth and that the jury should have been instructed that the defense of truth could only be established by evidence that he was engaging in pimping activity at the time the statements were made. We hold that the evidence of past activity was relevant and sufficient to establish a defense of truth and that the trial court did not err in not giving such an instruction.

In the unpublished portion of this opinion, we discuss Albert Sr.'s other contentions on appeal, as to which we hold that there was either no error or that Albert Sr. has forfeited or abandoned the issues. We therefore affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

*Albert Sr.'s statements to the Hughes brothers*

Albert Sr. married Aida in 1970, and Albert Jr. and Allen were born in April 1972. Albert Sr. and Aida divorced in approximately 1976, and the

---

[1] Because the parties share the same surname, we refer to them as Albert Sr. (or plaintiff), Aida, Albert Jr., and Allen. Albert Jr. and Allen sometimes are collectively referred to as the Hughes brothers.

Hughes brothers lived primarily with their mother, although they did stay with or visit their father at times.

According to the Hughes brothers, their father told them he was a pimp.[2] They said Albert Sr. told them in 1985 he was a pimp from about 1978 to 1981. They testified that in a second conversation in 1987 during a trip to Detroit, their father had a "heart to heart," "coming clean" conversation with them in which he "opened up to us about his life, and . . . he explained to us the truth. He told us that he was a pimp at one time." Albert Sr. told the Hughes brothers that Cherry Morton, Toni, and Sherry, women the Hughes brothers knew during their childhood, were prostitutes.

Other family members, including the Hughes brothers' half sister, their uncles, and a cousin told Allen his father was a pimp. Terrance Morton, Albert Sr.'s son with Cherry Morton, also testified his father was a pimp. Albert Sr. denied he was a pimp.

*The statements in Vanity Fair and USA Today*

The Hughes brothers began directing music videos professionally when they were 19 years old. They eventually became motion picture producers. In connection with an upcoming motion picture, Veronica Webb, a friend of the Hughes brothers, told them she wanted to interview them. During a telephone conversation with her, Albert Jr. said that a producer stole an idea from him and his brother and that when the Hughes brothers tried to contact the producer, the producer threatened to have them investigated. They told their agent to tell the producer "to put the private investigator on us. We have nothing to fear. Our life is an open book. My father was a pimp and my mother is a lesbian."

Vanity Fair published Ms. Webb's article in October 2001. The article contained the following quote: " 'We wanted to send a message that we're not hood filmmakers. We can do other films,' says Allen. 'Our mother is a lesbian. Our dad's a pimp,' says Albert. They both agree: 'We're interested in the underclass.' " In addition to the Vanity Fair article, an article in USA Today quoted Allen as saying his father "dabbled in the pimptorial arts."

---

[2] Under California law, "any person who, knowing another person is a prostitute, lives or derives support or maintenance in whole or in part from the earnings or proceeds of the person's prostitution, or from money loaned or advanced to or charged against that person by any keeper or manager or inmate of a house or other place where prostitution is practiced or allowed, or who solicits or receives compensation for soliciting for the person, is guilty of pimping, a felony." (Pen. Code, § 266h.) The dictionary definition of "pimp" is "a man who solicits clients for a prostitute." (Merriam-Webster Online Dictionary (2004) www.Merriam-Webster.com [as of Sept. 2004].)

Allen admitted making the statement in 1995. He said that although he made it "in jest," it was true. The USA Today article was not produced at trial, and a purported computer copy of it was not admitted in evidence.

*The lawsuit*

Albert Sr. filed a complaint for defamation against the Hughes brothers and Conde Nast.[3] By special verdict, the jury answered "no" to the question, "Did defendant Albert Hughes make a defamatory statement about the plaintiff?" The jury answered "no" to the identical question as to Allen Hughes.

Plaintiff moved for a new trial on the grounds the evidence was undisputed that the Hughes brothers made the defamatory statements to the media, the evidence in support of the verdict was insufficient, the judgment was inconsistent with the special verdict, the trial court incorrectly answered a jury question, and jury confusion resulted from the instructions and special verdict form. The motion was denied, and this appeal followed.

## DISCUSSION

Albert Sr.'s opening brief consists of 101 separately numbered paragraphs each containing one or more claimed errors. The paragraphs are grouped under five headings: Special Verdict Unsupported By Concession; No Evidence of Pimping; Unfair Trial; Defective Jury Instructions; and Injunctive Relief. We address plaintiff's various claims of error, which, as discussed below, have largely been forfeited or abandoned.

I.–IV.B.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### C.  *Statement of past fact*

The parties agree the statement, "Our dad's a pimp," if false, would be defamatory. Plaintiff, Albert Sr., denies he ever told the Hughes brothers he had engaged in pimping activities, but asserts that even if he had, evidence of his past activities could not be used to support the truth of the statement in question. He says there is no evidence that he *is* a pimp. He raises this point by arguing that the evidence of his alleged statement to the Hughes brothers about conduct decades earlier (a) was inadmissible as remote and irrelevant, (b) could not support a determination of truth of the statement "Our dad's a

---

[3] Conde Nast, Vanity Fair's publisher, settled the lawsuit and is not a party to this appeal.
[*]See footnote, *ante,* page 931.

pimp," and (c) required the trial court to instruct the jury that "Our dad's a pimp" refers to a present, rather than past, fact. The record does not reflect that plaintiff requested such an instruction or objected to the evidence he now states is irrelevant, and therefore he forfeited his claims of error as to the instruction and admission of evidence. Nevertheless, because each of plaintiff's arguments referred to in this section relates to the issue of whether the evidence of past pimping activity can establish the truth of the statement "Our dad's a pimp," we discuss that issue.

■ "Defamation is effected by either of the following: [¶] (a) Libel. [¶] (b) Slander." (Civ. Code, § 44.) To constitute libel or slander, the published statement must be false. (Civ. Code, §§ 45, 46.) To establish the defense of truth—i.e., that the statement is not false—defendants do not have to prove the "literal truth" of the statement at issue. (*Emde v. San Joaquin County Central Labor Council* (1943) 23 Cal.2d 146, 160 [143 P.2d 20].)[14] "[S]o long as the imputation is substantially true so as to justify the 'gist' or 'sting' of the remark" the truth defense is established. (*Ibid.*; see also *Campanelli v. Regents of University of California* (1996) 44 Cal.App.4th 572, 582 [51 Cal.Rptr.2d 891]; see 1 Sack on Defamation: Libel, Slander and Related Problems (3d ed. 2004) § 3.7, pp. 3-16–3-21; Smolla, *supra,* §§ 5:14–5:17, pp. 5-19 to 5-24.2.)

The United States Supreme Court said, "The common law of libel takes but one approach to the question of falsity, regardless of the form of the communication. [Citations.] It overlooks minor inaccuracies and concentrates upon substantial truth. As in other jurisdictions, California law permits the defense of substantial truth and would absolve a defendant even if [he or] she cannot 'justify every word of the alleged defamatory matter; it is sufficient if the substance of the charge be proved true, irrespective of slight inaccuracy in the details.' [Citations.] . . . Minor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.' [Citations.] Put another way, the statement is not considered false unless it 'would have a different effect on the mind of the reader from that which the pleaded truth would have produced.' [Citations.]" (*Masson v. New Yorker Magazine* (1991) 501 U.S. 496, 516–517 [115 L.Ed.2d 447, 111 S.Ct. 2419].)

■ Whether a statement is true or substantially true may depend upon how the statement is understood. So long as the statement "Our dad's a pimp" can reasonably be understood to mean that plaintiff had at one time

---

[14] Following *Philadelphia Newspapers, Inc. v. Hepps* (1986) 475 U.S. 767 [89 L.Ed.2d 783, 106 S.Ct. 1558], there is some question over whether the plaintiff or defendant has the burden to establish truth in a case not involving a public figure or public matter. (See 1 Smolla, Law of Defamation (2d ed. 1997–2004) § 5:13, pp. 5-12 to 5-19 (Smolla) [suggesting plaintiff should have the burden of proof].)

engaged in pimping activity, it was for the jury to determine if that is how the statement should be understood. (See *Maidman v. Jewish Publications, Inc.* (1960) 54 Cal.2d 643, 651 [7 Cal.Rptr. 617, 355 P.2d 265] [if a statement can reasonably have been understood to make a defamatory charge—a legal issue—"it is for the trier of fact to determine if the readers did so understand it"]; *Kahn v. Bower* (1991) 232 Cal.App.3d 1599, 1608 [284 Cal.Rptr. 244]; Rest.2d Torts, § 614.) Also, the issue of whether a statement is true or substantially true is normally considered to be a factual one. (*Shumate v. Johnson Publishing Co.* (1956) 139 Cal.App.2d 121, 132 [293 P.2d 531]; *D.A.R.E. America v. Rolling Stone Magazine* (C.D.Cal. 2000) 101 F.Supp.2d 1270, 1288; *Maheu v. Hughes Tool Co.* (9th Cir. 1977) 569 F.2d 459, 465; *Lundell Manufacturing Company v. American Broadcasting Companies* (8th Cir. 1996) 98 F.3d 351, 358.)

Here, the jury, in finding the statement "Our dad's a pimp" not to be defamatory, may have understood the statement to mean that plaintiff had engaged in such activities in the past or that the statement is substantially true as a result of the past activities. The communication "[o]ur dad's a pimp" could reasonably be understood as meaning that he had at one time engaged in that activity. And a fact finder could reasonably conclude that the "gist or sting" of the remark does not necessarily depend on when the plaintiff was a pimp. For example, if one had engaged in criminal acts in the past, that might support the assertion that the person is a criminal. There is support for this proposition.

For example, the Restatement Second of Torts states in section 581A, comment c, as follows: "If the defamatory statement is a specific allegation of the commission of a particular crime, the statement is true if the plaintiff did commit that crime. If the accusation is general and implies the commission of unspecified misconduct of a particular type, the statement is true if the plaintiff committed any misconduct of that type. Thus a charge that another is an embezzler is true if he committed a single act of embezzlement. However, if the charge is one of persistent misconduct, the committing of a single instance of that conduct is not enough unless the instance is such as to imply its repetition. Thus, a charge that a woman is a prostitute is not made true by the committing of a single act of unchastity.[15] A statement may be a characterization of the person about whom it is made that expresses the maker's unfavorable judgment upon undisclosed conduct of the other. If this unfavorable comment implies the existence of facts that justify the terms in which he has described the person of whom he spoke, it is the truth of these facts that is to be determined. (See § 566.)" (See Smolla, *supra,* § 5:22, pp. 5-33 to 534; see also Murnaghan, *Ave Defamation, Atque Vale Libel and*

---

[15] See *Rutherford v. Paddock* (Mass. 1902) 180 Mass. 289 [62 N.E. 381] (Holmes, C. J.) (proof of prior acts of unchastity of plaintiff does not establish truth that she is a whore).

*Slander* (1976) 6 Balt. L.Rev. 28, 40 ["consider the case of a plaintiff objecting to the defendant's accusation that the plaintiff is a thief. It is well established that, although the charge is general, proof of a single instance of larceny will establish the truth thereof"].)

*Guccione v. Hustler Magazine, Inc.* (2d Cir. 1986) 800 F.2d 298 (*Guccione*) dealt with the issue of whether, in a defamation action, past conduct of a plaintiff can establish the truth of a statement about the plaintiff that is expressed in the present tense. Although the facts in *Guccione* are different than those here, the discussion in that case is not incompatible with our conclusion.

In *Guccione, supra,* 800 F.2d 298, a publisher published an article that included the language, " 'Considering he is married and also has a live-in girlfriend . . . .' " (*Id.* at p. 299.) In fact, Guccione had divorced his wife four years before the article was published. The plaintiff, a rival publisher, contended that "because the statement was phrased in the present tense it accused him of committing adultery at the very time the statement was printed" (*id.* at p. 301), and therefore it was false because he was divorced at the time the statement was made. The court said there was no evidence from which the statement "may fairly be read to mean that the marriage and the cohabitation existed simultaneously *only* at a moment or brief interval just prior to the article's publication. The statement can be read to mean only that the marriage and the cohabitation existed simultaneously throughout an undefined span of time that included the period immediately prior to publication." (*Id.* at p. 302.) The court concluded, "On this reading, the undisputed facts established the defense of substantial truth as a matter of law." (*Ibid.*)[16]

The court in *Guccione, supra,* 800 F.2d at pages 303–304, stated, "This is not to suggest that every person guilty of even a single episode of marital infidelity has no recourse if, years after the fact, he is accused in print of currently committing adultery. However, the undisputed facts of this case— the extremely long duration of Guccione's adulterous conduct, which he made no attempt to conceal from the general public, and the relatively short period of time since his divorce—make it fair to say that calling Guccione an 'adulterer' in 1983 was substantially true. Of course, 'former long-time adulterer' would have been more precise. But on the facts of this case, to require such a level of accuracy is unreasonable. The article labels Guccione an adulterer. The average reader would understand that term to include a man who unabashedly committed adultery for thirteen of the last seventeen years and whose adulterous behavior ended only because his wife ultimately divorced him. Where, as here, 'the truth is so near to the facts as published

---

[16] The court also relied upon the concept that a plaintiff can be "libel-proof." (*Guccione, supra,* 800 F.2d at p. 303.)

that fine and shaded distinctions must be drawn and words pressed out of their ordinary usage to sustain a charge of libel, no legal harm has been done.' [Citation.]"

In the instant case, the proximity of the conduct to the publication is farther than in *Guccione, supra,* 800 F.2d 298. Nevertheless, the discussion in *Guccione* suggests the court recognized that a statement that one is an adulterer does not have to be read as referring to the person's conduct at the time of publication and that the past adulterous conduct can make the statement substantially true. Also, the court suggested that how to read the statement was a question of fact, although in that case, the court said that the evidence was such that the only fair reading of the statement could be determined as a matter of law. In the instant case, how distant and how pervasive the pimping activities were are factors for the fact finder to consider on the question of whether the imputation was substantially true as to justify the "gist or sting" of the remark.[17]

■ Because the past activities can support a conclusion that the statement in question is substantially true, evidence of those activities was relevant and admissible, and the trial court did not err by not instructing the jury that the statement, "Our dad's a pimp," refers to a present fact. Although disputed, there was substantial evidence that plaintiff had engaged in pimping. There being substantial evidence of that disputed fact, the jury verdict must be affirmed. (See *Khawar v. Globe Internat., Inc.* (1998) 19 Cal.4th 254, 264 [79 Cal.Rptr.2d 178, 965 P.2d 696].)

V.–VII.*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

---

[17] Contrary to plaintiff's suggestion, privacy principles (Cal. Const., art. I, § 1; *Briscoe v. Reader's Digest Assn.* (1971) 4 Cal.3d 529 [93 Cal.Rptr. 866, 483 P.2d 34]) do not impact the effect of truth in a defamation action. (2 Harper et al., The Law of Torts (1986) § 5.20, p. 165.) Truth remains an absolute defense to a defamation action.

*See footnote, *ante*, page 931.

## DISPOSITION

The judgment is affirmed. Respondents are to recover their costs on appeal.

Turner, P. J., and Armstrong, J., concurred.

A petition for a rehearing was denied October 13, 2004, and appellant's petition for review by the Supreme Court was denied January 19, 2005.