[No. E049504. Fourth Dist., Div. Two. Apr. 19, 2011.]

INNOVATIVE BUSINESS PARTNERSHIPS, INC., Plaintiff and Appellant,
v.
INLAND COUNTIES REGIONAL CENTER, INC., Defendant and
Respondent.

COUNSEL

Law Offices of Chad Carlock and Chad Carlock for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Rima M. Badawiya, Jeffry A. Miller, Jennifer G. So and Matthew B. Stucky for Defendant and Respondent.

OPINION

**HOLLENHORST, Acting P. J.—**

## I. INTRODUCTION

Plaintiff and appellant Innovative Business Partnerships, Inc. (IBP), appeals from judgment following the trial court's grant of summary judgment in favor of defendant and respondent Inland Counties Regional Center (IRC) in IBP's action for breach of contract, contractual and tortious breach of the covenant of good faith and fair dealing, and defamation. IBP contends triable issues of fact exist as to all its alleged causes of action. We conclude the trial court erred in granting summary judgment; however, summary adjudication is proper as to the cause of action for defamation.

## II. BACKGROUND

The Lanterman Developmental Disabilities Services Act (hereafter, Lanterman Act) (Welf. & Inst. Code, § 4500 et seq.) and implementing regulations (hereafter, regulations) (Cal. Code Regs., tit. 17, § 50201 et seq.) provide a comprehensive approach to providing services for developmentally disabled persons (sometimes referred to herein as consumers) in this state. Under the Lanterman Act, regional centers have been established to ensure those consumers receive the "services and supports best suited to them throughout their lifetime." (Welf. & Inst. Code, § 4620.) IRC, a nonprofit corporation, is the regional center that contracts with the State of California to manage and fund services for consumers in Riverside and San Bernardino Counties. IBP provides living care and adult daycare for consumers through programs in Apple Valley and Victorville and also provides transportation for consumers to and from its programs.

The state provides funding to IRC, which in turn purchases services from service providers (vendors) such as IBP. Any agency that wishes to provide services for consumers within the region must contract with IRC. In contracting with vendors, a regional center must comply with the Lanterman Act and the regulations. (E.g., Cal. Code Regs., tit. 17, §§ 50607–50611, 54326, 56013.)

In 2007, IBP filed a lawsuit against IRC alleging causes of action for breach of contract, contractual and tortious breach of the covenant of good faith and fair dealing, and defamation. The gravamen of IBP's breach of contract cause of action was that IRC failed to comply with the Lanterman Act and the regulations in making payments to IBP for services provided. Although the dealings between the parties had been covered by a written contract in previous years, the most recent written contract had expired in 2003. IBP continued to provide services for which it now claims it was entitled to be paid at IRC's standard rate schedule. In the causes of action based on the breach of the implied covenant of good faith and fair dealing, IBP alleged bad faith on IRC's part in the performance of its obligations. In the defamation cause of action, IBP alleged that IRC falsely told people IBP was refusing to accept new consumers.

IRC filed a motion for summary judgment, arguing (1) there were no triable issues of material fact as to the cause of action for breach of contract because no written contract had existed between the parties since 2003; (2) in the absence of a contract between the parties, the causes of action based on breach of the covenant of good faith and fair dealing could not stand; and (3) there were no triable issues of material fact as to the cause of action for defamation because the alleged defamatory statement was true. IBP opposed the motion, arguing that the parties' conduct evidenced an implied-in-fact or implied-in-law contract under which it was entitled to reasonable compensation, which, under the Lanterman Act and the regulations, was compensation at IRC's standard rate schedule. IBP also submitted declarations to support its defamation claim. IRC filed a reply, arguing that even if an implied-in-fact contract existed, IBP had waived damages by continuing to request and accept reimbursement at a lower rate.

The trial court found that at the expiration of the written contracts, an implied-in-fact contract existed under which IBP transported consumers at the public rate. The trial court further ruled that because there was no breach of contract, the causes of action for breach of the covenant of good faith and fair dealing also failed. The trial court found that the alleged defamatory statements were truthful and could therefore not support a defamation claim.

## III.  DISCUSSION

### A.  *Request for Judicial Notice*

IBP has filed two requests for judicial notice, and this court reserved its ruling on those requests for consideration with the appeal. IRC has filed oppositions to both requests.

First, IBP requested this court to take judicial notice of the Web site of the State Department of Developmental Services, and more specifically, a document entitled "Reimbursement Rates FAQs." Second, IBP requested this court to take judicial notice of an August 2010 report of the State Auditor entitled "A More Uniform and Transparent Procurement and Rate-Setting Process Would Improve the Cost-Effectiveness of Regional Centers." IBP asserts the report purportedly supported IBP's position that IRC "intentionally and improperly managed its funding of transportation services . . . ."

■ Neither the Web site nor the auditor's report was presented to the trial court. In the absence of exceptional circumstances, the appellate court does not consider evidence that was not presented to the trial court. (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 [58 Cal.Rptr.2d 899, 926 P.2d 1085] ["Reviewing courts generally do not take judicial notice of evidence not presented to the trial court. Rather, normally 'when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered.' "].) IBP has not demonstrated any exceptional circumstances, and we therefore deny IBP's requests for judicial notice.

### B. *Administrative Remedies*

On our own motion, we requested the parties to provide additional briefing to address whether IBP was required to exhaust administrative remedies and whether its failure to do so was fatal to its claims. We are now persuaded that the administrative remedies provided in the regulations do not apply to the specific situation before us.

Under the regulations, a vendor must appeal certain specific decisions of a regional center to the deputy director of the State Department of Developmental Services. Those decisions include:

"(1) Denial of a request for an amendment to a written contract;

"(2) Denial of a proposed rate based on a cost statement;

"(3) Denial of a proposed negotiated rate; and/or

"(4) Denial of a proposed contract based on noncompliance with Sections 58513 through 58524 or Sections 58540 through 58555 of these regulations." (Cal. Code Regs., tit. 17, § 58560, subd. (a).)

This case, however, does not arise from any of those situations defined in the regulations. First, the case does not arise from the denial of a request for

an amendment to a written contract. Both parties agree there was no written contract covering the period in controversy. Second, the case does not arise from the denial of a proposed rate based on a cost statement. Rather, IBP contends IRC should have been paying according to its standard rate schedule. By definition, negotiated rates are rates other than the standard rates. (Compare Cal. Code Regs., tit. 17, § 58540 with Cal. Code Regs., tit. 17, §§ 58542, 58543.) Third, the case does not arise from the denial of a proposed negotiated rate. Rather, IBP contends it should be paid according to the standard rate schedule in the absence of an express agreement to the contrary. (Cal. Code Regs., tit. 17, § 58524, subds. (a), (b).) Finally, the case does not arise from denial of a contract because of noncompliance with regulations. Thus, we conclude that an administrative remedy was not available to IBP under the regulations, and the doctrine of exhaustion of administrative remedies does not apply.

### C. *Standard of Review*

In reviewing the trial court's grant of summary judgment, we assume the role of the trial court and independently determine the merits of the motion. (*Sellery v. Cressey* (1996) 48 Cal.App.4th 538, 543 [55 Cal.Rptr.2d 706].) A defendant moving for summary judgment bears the initial burden of showing either a complete defense to the plaintiff's claims or that the plaintiff cannot establish at least one element of the cause of action. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 [107 Cal.Rptr.2d 617, 23 P.3d 1143].) If the defendant makes this showing, the burden shifts to the plaintiff to establish that a triable issue of material fact exists. (*Ibid.*) However, if the defendant fails to meet its burden, the motion is defeated, and the plaintiff has no obligation to demonstrate a triable issue of material fact. (*Villa v. McFerren* (1995) 35 Cal.App.4th 733, 743–744 [41 Cal.Rptr.2d 719].) In reviewing whether these burdens have been met, we strictly scrutinize the moving party's papers and construe all facts and resolve all doubts in favor of the party opposing the motion. (Code Civ. Proc., § 437c, subd. (d); *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 [100 Cal.Rptr.2d 352, 8 P.3d 1089].)

### D. *Breach of Contract Claims*

#### 1. *Issues Framed by Pleadings*

IBP alleged it is a vendor that provides services, including supported living, adult daycare, and transportation, to consumers. In 2001, the parties entered into a written contract for IBP to provide transportation services to consumers at a negotiated rate from July 1, 2001, through June 30, 2002. The contract called for payment according to a tiered schedule based upon

distance. IBP attached a copy of the 2001–2002 contract to the complaint and alleged that following the expiration of the written contract, "the parties continued to operate as they had prior to the expiration of the transportation contract . . . ." IBP alleged that it agreed to reduce its rate of reimbursement for transportation for the 2002–2003 fiscal year only to assist IRC in dealing with a shortfall of funds. IBP alleged that IRC breached the parties' contract by (1) failing to pay IBP the negotiated rate for some consumers; (2) paying IBP a lower rate not agreed to in the contract for some consumers; (3) attempting to turn IBP's temporary agreement to accept a reduced rate of payment into a permanent rate change; (4) removing consumers from IBP's program when IBP refused to accept incorrect payment; (5) refusing to refer consumers to IBP's program unless IBP accepted incorrect payment; and (6) using inappropriate alternate transportation providers to avoid paying IBP the correct rate.

### 2. IRC's Opposition

IRC moved for summary judgment and provided a separate statement of undisputed material facts. As to the breach of contract action, IRC asserted there was no enforceable contract between the parties from 2004 to the present. In support of that assertion, IRC cited portions of the deposition of Therese Kragness, IBP's president and secretary, and a portion of IBP's settlement conference statement. IRC's entire factual showing is set forth below.

The first deposition excerpt on which IRC relies is as follows:

"[Counsel for IRC]: Q Okay. It's fair to say, though, by July, 2003 the various contracts that we have now discussed had expired?

"[Kragness]: A They were still paying based on the contracts.

"Q Right. But the terms of the contract, the time period for the contract had ended in June of 2003?

"A As per what the contract states."

The second deposition excerpt on which IRC relies is as follows:

"Q Okay. So for the 2002 time period, there are also no issues with respect to the transportation issue; correct?

"A '03 is when it started. [¶] . . . [¶]

"Q After your husband executed this contract in 2002, were there any other contracts that he executed between IBP and IRC?

"A No, not for that period."

The excerpt from the mandatory settlement conference statement on which IRC relies is as follows: "IBP contends that there was (and is) no agreement between the parties for the reduced rate to continue beyond the 2003–2004 fiscal year, and therefore IRC should have been reimbursing IBP for transportation under the 'standard rate schedule' that it pays to all other transportation vendors." (Boldface omitted.)

### 3. *Analysis*

IRC argued in the trial court and continues to argue on appeal that this case is governed by ordinary contract principles, and under those principles, no express contract, implied-in-fact contract, or implied-in-law contract existed under which IRC was required to pay IBP under IRC's rate schedule for transportation services. IRC contends that IBP was thus entitled to be paid only at the public rate negotiated in the 2003–2004 fiscal year. In making its arguments, IRC fails to cite a single provision of the Lanterman Act or the regulations. However, this case arises in the highly regulated environment of provision of services to developmentally disabled persons. All contracts between regional centers and vendors are governed by those statutes and regulations, not merely by the common law of contracts.

Under the regulations, "(a) A contract for transportation service between a regional center and a vendor *shall be in writing*, except as provided in subsection (b) below, and shall not exceed five years including all amendments.

"(b) The following shall not require written contracts:

"(1) Temporary transportation service purchased pursuant to Section 58541; or

"(2) Transportation service purchased *using standardized rates* pursuant to Section 58542. . . ." (Cal. Code Regs., tit. 17, § 58524, subds. (a), (b), italics added.)

IBP argues that because all contracts "for transportation service between a regional center and a vendor shall be in writing," unless the contract is for temporary transportation service or unless the service is purchased "using

standardized rates," IRC was required to pay IBP the standardized rates for all its consumers in the absence of a written contract. (Cal. Code Regs., tit. 17, § 58524, subds. (a), (b).)

The showing IRC made in its motion for summary judgment was insufficient to establish a complete defense to IBP's cause of action for breach of contract. At most, IRC established that the written contract between the parties terminated in 2003. However, it was undisputed that IBP continued to provide services for which IRC was obligated to pay. According to the regulations, in the absence of a written contract, the payment for those services was required to be at IRC's standardized rates. (Cal. Code Regs., tit. 17, § 58524, subds. (a), (b).) We therefore conclude that triable issues of fact indeed exist as to IBP's cause of action for breach of contract.

### E. Breach of Covenant of Good Faith and Fair Dealing Claim

In its complaint, IBP alleged a breach of the implied covenant of good faith and fair dealing that inheres in every contract. In its motion for summary judgment/summary adjudication as to that claim, the only purportedly undisputed material fact IRC alleged to support its position was that "[t]here is no enforceable contract for the relevant time period of 2004 to the present day."

■ A cause of action for breach of the implied covenant of good faith and fair dealing is premised on the breach of a specific contractual obligation. (*Racine & Laramie, Ltd. v. Department of Parks & Recreation* (1992) 11 Cal.App.4th 1026, 1031–1032 [14 Cal.Rptr.2d 335] [the purpose of the implied covenant is to " 'prevent a contracting party from engaging in conduct which . . . frustrates the other party's rights to the benefits of the contract' "].) As discussed above, however, triable issues of material fact exist with respect to IBP's breach of contract claim. Thus, IRC has failed to meet its burden of establishing a complete defense to the cause of action for breach of the covenant of good faith and fair dealing.

### F. Tortious Breach of Covenant of Good Faith and Fair Dealing Claim

In its complaint, IBP alleged a tortious breach of the implied covenant of good faith and fair dealing. In its motion for summary judgment, in addition to its assertion that there was no enforceable contract (which we have addressed above), IRC alleged as a purportedly undisputed material fact that "[t]he cause of action for tortious breach generally requires an independent tort and these elements are not met."

■ A cause of action for tortious breach of the covenant of good faith and fair dealing requires the existence and breach of an enforceable contract

as well as an independent tort. (See *Kruse v. Bank of America* (1988) 202 Cal.App.3d 38, 57 [248 Cal.Rptr. 217] ["The inherent precondition to such a tort claim is the existence and breach of an enforceable contract."].) However, IRC's assertion that the elements of an independent tort were not met was nothing more than an assertion of an ultimate fact and conclusion of law, not an evidentiary fact as required to satisfy the requirements of a motion for summary judgment. (Code Civ. Proc., § 437c, subd. (b)(1); *Scheble v. Nell* (1962) 200 Cal.App.2d 435, 439 [19 Cal.Rptr. 375].) Thus, IRC has failed to meet its burden of establishing a complete defense to IBP's cause of action for tortious breach of the covenant of good faith and fair dealing.

### G. Defamation Claim

#### 1. Issues Framed by Pleadings

■ IBP alleged IRC employees had defamed it by stating to third parties that, in effect, "IBP was 'refusing' to accept consumers into its program." IBP alleged those statements were false and were defamatory "in that they tend[] directly to injure IBP in the conduct of its business by falsely imputing a negative perception of Plaintiff and placing blame for consumers' transportation difficulties on IBP instead of IRC." Under the Civil Code, statements are slanderous when they are of a type that "[t]ends directly to injure [a plaintiff] in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits . . . ." (Civ. Code, § 46, subd. 3.) Thus, the complaint adequately alleged a cause of action for defamation.

#### 2. IRC's Defense

■ A defendant is not liable for defamation if he or she proves the truth of the alleged defamatory statement. (*Lipman v. Brisbane Elementary Sch. Dist.* (1961) 55 Cal.2d 224, 233 [11 Cal.Rptr. 97, 359 P.2d 465], superseded by statute on another ground as stated in *Los Angeles Police Protective League v. City of Los Angeles* (1994) 27 Cal.App.4th 168, 174, fn. 5 [32 Cal.Rptr.2d 574].) Every detail of the statement need not be literally true so long as the imputation is substantially true. (*Hughes v. Hughes* (2004) 122 Cal.App.4th 931, 936 [19 Cal.Rptr.3d 247].)

To support its motion for summary judgment, IRC provided the declaration of Tiki Thompson, its program manager for resource development and transportation, stating that she had received an e-mail from IBP giving notice that IBP would no longer accept clients transported through public transportation. Thompson further declared she had "not instructed any IRC service

coordinators not to refer consumers to IBP's program, nor do I know of any coordinators who have been told such. To my knowledge, IRC has never informed others that IBP was not accepting referrals to their program and further [*sic*]. Additionally, to my knowledge, IRC has not denied any transportation for any consumer attending the IBP program." Corina De Leon, IRC's chief of community services, also provided a declaration stating, "On or about November 15, 2006, I was informed from staff at IRC that IBP sent notice that they would not accept consumers into their program if they were transported via public transportation. I have never instructed any IRC employees not to refer consumers to IBP's programs. Additionally, I have never instructed case managers to inform consumers and/or their families that IBP was not accepting referrals."

To support its opposition to the motion, IBP provided several declarations. In her declaration, Michelle Wright described a conversation in which a "young man" told her his " 'brother and family were told that they couldn't get transportation and IBP was refusing clients because of transportation issues.' " Joseph White declared that a service coordinator told him "IBP was having transportation issues" and "she did not know whether she could get IRC to approve funding for the consumer to attend IBP due to transportation problems." Elizabeth White declared a client who wanted an IBP program had been told by a service coordinator at IRC "that IBP wasn't getting funding and so she was unable to go to IBP for this reason." Barbara Shores, the parent of a consumer, declared she had not been satisfied with public transportation after IRC determined it was appropriate for her daughter. IRC denied approval for IBP to transport the daughter, and Shores appealed the decision. IRC eventually agreed to provide funding for IBP to transport the daughter. Charles Robinson declared that IRC told him he would have to transport a consumer to IBP's program on a temporary basis; IRC ultimately provided funding for IBP to transport the consumer. Gloria Corbin declared that a resident of the facility she operated told her that the facility had to provide transportation because of a dispute between IBP and IRC over transportation.

We conclude that, although the trial court overruled IRC's evidentiary objections to IBP's declarations, those declarations were based on hearsay and were therefore inadmissible. Wright's declaration was based on what an unidentified young man had told her about what IRC had told him. Elizabeth White's declaration was based on what a client told her about what IRC had told the client. Corbin's declaration was similarly based on what a consumer told her about what IRC had told him. IBP cannot rely on those statements to create a material issue of fact. The other three declarations, even if admissible, do not demonstrate any false statement made by an IRC employee. Joseph White declared that an IRC employee told him that she did not know if IRC would approve funding for a consumer to attend IBP's program. The

statement is at best equivocal and does not meet the definition of a defamatory statement under Civil Code section 46, subdivision 3. Shores's declaration does not set forth any slanderous statement IRC made to her but rather concerns Shores's issues in obtaining transportation for her daughter. Robinson's statement likewise does not set forth any slanderous statement made by IRC.

■ We conclude IBP has failed to establish the existence of a triable issue of material fact with respect to its cause of action for defamation.

## IV. DISPOSITION

The judgment is reversed and the matter is remanded with directions to the trial court to enter an order granting summary adjudication as to the cause of action for defamation. Costs shall be awarded to Plaintiff and Appellant.

Miller, J., and Codrington, J., concurred.

Respondent's petition for review by the Supreme Court was denied July 13, 2011, S193586.