Filed 1/31/25  Kissner v. Fraser CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| DAVID M. KISSNER,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LISA FRASER, et al.,<br><br>    Defendants and Appellants. | H051430<br>(Santa Clara County<br> Super. Ct. No. 22CV402699) |

Appellants Loma Prieta Joint Union School District (District) and two superintendents of the District's Board of Trustees, Lisa Fraser and Kevin Grier, (together defendants) appeal from an order denying their anti-SLAPP motion in an employment action filed by respondent David M. Kissner.  (Code Civ. Proc., § 425.16.)  Kissner, a middle school teacher, sued the District and a number of individuals affiliated with the District after he was terminated for cause.  The District claimed Kissner behaved inappropriately with students, but Kissner alleged that these claims were pretexts made in retaliation for his opposition to the District allowing students to participate, without consequence, in a nationwide school walkout intended to encourage stricter gun laws in the United States.  In addition to various constitutional and employment claims, Kissner alleged a claim for defamation and false light based on the District's release of unsubstantiated allegations of his improper behavior with students in a public records request.  Defendants filed an anti-SLAPP motion, challenging the defamation and false

light causes of action. The trial court granted the motion as to some defendants but denied the motion as to the District, Fraser, and Grier. Finding that Kissner failed to present evidence to support all elements of his defamation and false light claims, we reverse.

## I.    BACKGROUND

### A.    *Factual History*

Kissner worked as a math and science teacher at CT English Middle School in the Loma Prieta Joint Union School District, starting in 2012. In 2018, after a deadly shooting at Marjory Stoneman Douglas High School in Parkland, Florida, students around the country organized a walkout that took place in March 2018. Because Kissner believed the walkout was organized by "politically-partisan activists to further an anti-gun agenda using the nation's impressionable youth to exert political pressure on lawmakers," he objected to the District excusing the students' absences and believed this violated state law. In contravention of express directives from school administration, Kissner "elected to enforce state truancy laws in his classroom." He gave three students in his class who participated in the walkout failing grades on a quiz administered that day. According to Kissner, his action was "wildly unpopular" among parents and caused a great deal of tension in the District with his superiors and colleagues. Kissner contends parents "took to media to protest his grading decision," and after statewide news attention, Kissner and his wife "began receiving insults and threats on social media." Four days after the walkout, "in the face of the public outcry, Kissner gave a news conference to defend his decision."

The District launched an investigation into Kissner's conduct related to the walkout, and later expanded it to include allegations that he improperly represented the District in the press.

Two days after his news conference, the District received an anonymous letter accusing Kissner of improper behavior with children. The letter alleged that "1. Kissner

2

runs camps through a mountain church and through CT English in the summers. He frequently will single out one boy and take him somewhere alone, away from the group. 2. Kissner has provided alcohol to boys that he is alone and talking to. I know of at least 3 occasions where this has occurred. He has admitted to doing it one time. 3. Kissner has asked boys about sex and sexual encounters. 4. Kissner has phone numbers for some of the boys and texts them late at night." The letter went on to say, "I have never heard of Kissner physically touching a boy, but the acts that he has done are clearly 'grooming.' " On May 1, 2018, the District placed Kissner on administrative leave pending an investigation into "inappropriate interactions with minors."

The District referred the matter for criminal investigation and also retained outside counsel to investigate the factual allegations in the letter. In a report dated August 13, 2018, the investigator confirmed that, "the Anonymous Letter writer would not have sent the Anonymous Letter when she did if Mr. Kissner did not foist himself into a public dispute with the District over the Walkouts." During the investigation Kissner acknowledged providing alcohol to at least one underage student, texting former students late at night, and to having "conversations with minor boys about sexual encounters of theirs." However, Kissner maintained that there was no inappropriate intent behind any of these interactions as he was acting in his capacity as a "trusted adult" and "Christian mentor." The investigator also viewed a video on Kissner's Web site of, "several boys bare chested in their bathing suits and shorts. The video also depicted young teenage boys shooting guns, while Mr. Kissner stood behind them with his hands around their waists."

Kissner was allowed to return to the classroom on May 10, 2018. Although he wanted to complete the year, due to the mental and physical strain of the situation, Kissner went on medical leave and filed a workplace retaliation and harassment complaint with his employer at the end of May.

Kissner returned to school the next fall and on October 18, 2018, received a letter from Fraser that advised him of the outcome of the investigation, stating that "Though no criminal charges have been filed, and your employment status is not in jeopardy at this stage, your conduct, whether intended or not, has had a significant negative impact on students. Please be advised that any further report of providing alcohol to a minor will result in further corrective action up to and including criminal charges and/or possible termination of your employment." In regard to the "grooming" allegation, the letter stated that Kissner had acknowledged engaging in some of the behaviors supporting that characterization, and advised him that he should review materials from the National Education Association for "common-sense pointers for avoiding false allegations."

Shortly thereafter, Kissner filed a complaint with the EEOC alleging religious discrimination based on his interest in the "intelligent design" theory, which challenges the precepts of evolution taught in public schools. The EEOC could not substantiate the allegation. Throughout 2020 and 2021 Kissner continued to be actively involved in political and legal issues related to the District, including filing a successful writ of mandate against the District for school board election irregularities and challenging the District's budget practices as violative of state law.

On February 12, 2021, the District served Kissner with a Notice of Proposed Intent to Dismiss with Statement of Charges (Statement). All of the charges in the Statement were based on the facts ascertained in the 2018 investigation, and included the allegation of "grooming." Kissner, through counsel, demanded that the District dismiss the Statement, stating that the "slanderous charges lack any substance and are shamelessly based on nothing more than anonymous inadmissible hearsay." The District did not respond to the demand. On June 11, 2021, the District served Kissner with an Amended Notice of Proposed Intent to Dismiss with Statement of Charges (Amended Statement). The District again alleged potential grooming behavior in the Amended Statement, and added numerous new recent incidents, including one where Kissner

received warnings from the District related to a discriminatory comment by Kissner about a student and one related to an angry outburst by Kissner against a student. The Amended Statement also listed numerous instances of failure to cooperate with the District, improper use of resources to promote non-district activities and complaints about teaching practices. When the matter proceeded to an administrative hearing, no evidence of "grooming" was presented, and individual District defendants testified that they had no evidence supporting that allegation. No findings were made concerning "grooming."

According to the allegations in Kissner's complaint, after the Statements were issued, but before the administrative hearing, the District received two requests pursuant to the California Public Records Act (CPRA) related to the charges against Kissner: one for the original Statement, and one for the Amended Statement after it was issued. Fraser responded to the original request less than an hour after receiving it, by attaching the Statement to an email. Allegedly, the response also included a letter, which stated among other things that "[T]he California Court of Appeals held that records of complaints or investigations against a public employee can be disclosed only if 'the complaint is of a substantial nature and there is reasonable cause to believe the complaint or charge of misconduct is well founded.' " The letter also stated that the District could redact privileged or exempt information. The second CPRA request went to Grier, the new superintendent. Allegedly, Grier responded by attaching the Amended Statement to an email. The response again included a letter advising that the District could redact privileged or exempt information.

**B.**    ***Procedural History***

After he was terminated, Kissner filed a complaint alleging 12 causes of action against the District and several individual District employees and board members, including Fraser, Grier, Ben Abeln, Deana A. Arnold, Erin Asheghian, Ron Bourque, Charlotte Khandelwal, Billy Martin and Lawrence McVoy. Kissner stated claims for various constitutional violations, 42 U.S.C. Section 1983 claims, wrongful termination,

5

discrimination and retaliation claims, defamation per se and false light invasion of privacy claims, and breach of contract, negligence, and negligent infliction of emotional distress.

The District and individual defendants filed a special motion to strike Kissner's causes of action for defamation per se and false light pursuant to Code of Civil Procedure, section 425.16 (anti-SLAPP motion). Kissner opposed the motion, but agreed to dismiss his claims against Martin, the principal of CT English Middle School. Following a hearing, which took place over two days, the trial court granted the motion as to the individual defendants except Fraser and Grier. The court also denied the motion as to the District.[1]

The court found that the challenged activity, the release of the two Statements, was protected activity and that Kissner did not challenge this conclusion. The court went on to conclude that even though normally a plaintiff must present evidence to establish minimal merit of their claim in order to survive a special motion to strike, and that Kissner had failed to do so, the court accepted Kissner's argument that "any such showing was unnecessary as Defendants, through the moving papers, had already set forth argument and evidence to support a viable claim for defamation. This contention finds support in the opposition where Plaintiff states: 'Here, Defendants have not argued that the Complaint omits elements of the defamation and false light claims. . . they have only presented argument in support of an immunity defense.' [Citation.] Defense counsel effectively conceded the point as he did not contest the position of Plaintiff's attorney during oral argument. Therefore, the question of whether there is proper evidence to establish the elements of defamation is no longer a disputed issue before the Court. ·As a consequence, the Court will now examine whether any of the defenses raised

---

[1] The court also denied Kissner's request for attorney fees. Kissner has not appealed the order granting the motion as to the other individual defendants or the order denying his request for attorney fees.

6

defeat [the showing of merit required to overcome] a special motion to strike." The court concluded that the affirmative defenses did not defeat the showing of merit and denied the motion as to the District, Fraser, and Grier.

Defendants moved for reconsideration. Because of the pending deadline to appeal the court's anti-SLAPP order, the trial court granted an ex parte request from Defendants to advance the hearing on the motion for reconsideration to September 12, 2023. However, the court did not issue its order denying the motion for reconsideration until September 13, 2023, one day past the deadline to appeal.[2]

Defendants timely appealed the order denying the anti-SLAPP motion.

## II. DISCUSSION

On appeal, defendants, as they did below, contend that Kissner's defamation and false light claims must be stricken as SLAPP claims. " 'Code of Civil Procedure section 425.16 sets out a procedure for striking complaints in harassing lawsuits that are commonly known as SLAPP suits . . . which are brought to challenge the exercise of constitutionally protected free speech rights.' [Citation.]" (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788 (*Monster*).) "A court evaluates an anti-SLAPP motion in two steps. 'Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged. [Citations.] If the defendant carries its burden, the plaintiff must

_____

[2] Defendants move to strike Kissner's appendix which contains one document, the order on defendants' motion for reconsideration. Defendants contend the order was filed after they filed their appeal and the trial court therefore lost jurisdiction prior to issuing the order. The filing of the appeal in this matter stayed the proceedings and the trial court therefore did not have jurisdiction to rule on the motion for reconsideration after that time. (See Code Civ. Proc., § 916.) Nevertheless, we will deny the motion to strike, but consider the reconsideration order only to the extent it informs the procedural background on appeal. (See *Pulver v. Avco Financial Services* (1986) 182 Cal.App.3d 622, 631-632, superseded by statute on other grounds as stated in *Noori v. Bank of America, N.A.* (9th Cir. 2018) 710 Fed.Appx. 757, 758 [disregarding defects in the appendix and considering the papers as if properly prepared].)

7

then demonstrate its claims have at least "minimal merit. [Citation.]' " (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884 (*Wilson*).) "The grant or denial of an anti-SLAPP motion is reviewed de novo. [Citation.]" (*Monster*, at p. 788.)

The parties do not dispute that defendants have established that the challenged claims arise from protected activity. Therefore, we need only address the second step of the analysis – whether plaintiff has met his burden to show minimal merit. The California Supreme Court has "described this second step as a 'summary-judgment-like procedure.' [Citation.] The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. [Citation.] '[C]laims with the requisite minimal merit may proceed. [Citation.]' " (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384-385, fn. omitted.) "[A] plaintiff seeking to demonstrate the merit of the claim 'may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence. [Citations.]' " (*Monster*, *supra*, 7 Cal.5th at p. 788.) Additionally, if a defendant puts forth an affirmative defense as a means of showing that plaintiff cannot establish minimal merit, it is defendant who bears the burden of proof on the defense. (*Laker v. Board of Trustees of California State University* (2019) 32 Cal.App.5th 745, 768-769; *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 676 (*Peregrine*).)

## A. Defendants' arguments in the trial court did not relieve Kissner of the burden to show minimal merit.

The trial court did not require Kissner to provide evidence of minimal merit, concluding instead that he was relieved of the requirement by defendants' forfeiture of the issue. The Court stated, "[d]uring oral argument, [Kissner's] counsel admitted that the proper showing had not been made in the opposition papers submitted to the court,"

8

but "he claimed any such showing was unnecessary as Defendants, through the moving papers, had already set forth argument and evidence to support a viable claim for defamation." The court concluded that "Defense counsel effectively conceded the point as he did not contest the position of Plaintiff's attorney during oral argument. Therefore, the question of whether there is proper evidence to establish the elements of defamation is no longer a disputed issue before the court."

It is well settled that once the defendant shows that the claims, as pled, arise out of a protected activity, the burden shifts to the plaintiff to show minimal evidence of merit. (*Wilson*, *supra,* 7 Cal.5th at p. 884.) There is no basis in either law or fact to support a conclusion that a defendant's failure to affirmatively state the negative – that a plaintiff has *not* provided admissible evidence of minimal merit – somehow relieves the plaintiff of their burden. The parties do not cite, nor could we find, any authority to support such a conclusion. On the contrary, the Supreme Court has repeatedly reaffirmed the requirement that a plaintiff show minimal merit in the second step of the SLAPP analysis. Nor does the record support the forfeiture claim.[3] Irrespective of what defendants said or did not say at the hearing below, because our review is de novo, we are not bound by the trial court's conclusions regarding any purported forfeiture by defendants. We must evaluate all the evidence in the record to determine whether Kissner has met his burden. (See *De Havilland v. FX Networks, LLC* (2018) 21 Cal.App.5th 845, 856 (*De Havilland*).)

### B. Kissner Failed to Present Evidence of All Elements of His Causes of Action.

Kissner's seventh cause of action states a claim for defamation per se. To prove defamation, a plaintiff must show that "the intentional publication of a statement of fact

---

[3] While defendants' motion papers below did not include an argument regarding Kissner's failure to present evidence for step two, the parties do not agree about what defendants did or did not concede below. However, because there is neither a reporter's transcript nor a settled statement in the record, we are unable to independently ascertain what defendants did or did not say at the hearing.

9

that is false, unprivileged, and has a natural tendency to injure or which causes special damage. [Citations.]" (*Smith v. Maldonado* (1999) 72 Cal.App.4th 637, 645, fn. omitted (*Smith*).) A statement is defamatory per se if its defamatory meaning is plain on its face and does not need extrinsic information to be understood. (*ZL Technologies, Inc. v. Does 1-7* (2017) 13 Cal.App.5th 603, 623; *Hawran v. Hixson* (2012) 209 Cal.App.4th 256, 290.)

Kissner alleged that in releasing the Statement and Amended Statement in response to the CPRA requests, defendants published a statement of charges falsely alleging as fact, "that Kissner was guilty of 'Potential grooming behavior, such as: singling out a minor and being alone with a minor; …asking about sex/sexual encounters; and posting images of youth partially unclothed on the internet.' " Kissner further alleged that these statements were false, unprivileged and tended to injure him in his workplace. Because he alleges publication to third parties of knowingly false and unprivileged statements which are defamatory on their face, the allegations are sufficient to state a cause of action for defamation per se. (*Taus v. Loftus* (2007) 40 Cal.4th 683, 720.)

While the allegations are sufficient to state a claim for defamation per se, allegations alone are insufficient to overcome an anti-SLAPP motion. Kissner must show minimal merit with admissible evidence for each element of his claims. (*Monster*, *supra*, 7 Cal.5th at p. 788.) In addition to the pleadings, we can consider supporting and opposing affidavits stating the facts upon which the liability or defense is based and must "accept as true all evidence favorable to the plaintiff and assess the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law." (*Comstock v. Aber* (2012) 212 Cal.App.4th 931, 947 (*Comstock*).) Defendants contend that there is no evidence in the record of one or more of the elements of defamation, specifically publication of a false statement. Defendants also argue that even if there were such evidence, release of the statement of charges was privileged. Considering the record

10

before us, we agree that Kissner has failed to present evidence that the allegedly false statements were published.

### 1. Publication

In order to show minimal merit, a plaintiff must provide admissible evidence as to each element of a cause of action. (*Monster*, *supra*, 7 Cal.5th at p. 788.) If there is a failure of proof as to one element, the entire cause of action fails. (*Peregrine, supra,* 133 Cal.App.4th at p. 676; see also *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849, as modified (July 11, 2001) [in a summary judgment motion, a cause of action has no merit if one or more elements cannot be established].) Defendants contend that Kissner has not provided evidence of the publication element for his defamation cause of action.

For the purposes of a defamation claim, " 'Publication means communication to some third person who understands the defamatory meaning of the statement and its application to the person to whom reference is made.' [Citation.]" (*Sanchez v. Bezos* (2022) 80 Cal.App.5th 750, 763, review denied Sept. 28, 2022, citing *Smith, supra,* 72 Cal.App.4th at p. 645.) Below, Kissner argued that the evidence presented by defendants was sufficient to show minimal merit of the claims. If that were true, it would not matter who presented the evidence, since we must consider all the evidence in the record. (*De Havilland, supra*, 21 Cal.App.5th at p. 856.)

However, the evidence defendants submitted with their motion is insufficient to satisfy Kissner's burden to show intentional publication. The evidence shows that the District received CPRA requests for both the original and amended statements, which included the allegation that defendant was accused of potential grooming behavior. However, the record is unclear about what was turned over in response to the requests. Defendants included the *first* CPRA requests in the record, but not the *second* request. The record also includes the District's cover letter for the response to the *second* request, but not to the *first*, although it includes testimony from Fraser admitting that she

11

authorized her assistant to send a response to the *first* request. The record does not include the document(s) attached to either cover letter. The cover letter in the record states that the District could redact confidential information, but does not actually state what, if anything, was redacted. Without evidence of the CPRA response with the attachment itself, or at least some evidence that the Statements either included the grooming allegation or redacted it before sending, there is no evidence that the grooming allegation was published to a third party.

The fact that defendants' evidence is incomplete is not surprising. Defendants' burden in the anti-SLAPP motion was to show that the alleged conduct arose from protected activity, to present evidence of any affirmative defenses, or to disprove one of plaintiff's elements. (See *Comstock, supra,* 212 Cal.App.4th at p. 947.) They did just that. The burden to show minimal merit remained Kissner's even when defendants undertook to provide some evidence with their motion. According to the trial court's order, Kissner argued that defendants had presented sufficient evidence from which to find minimal merit. In regards to the element of publication, this is not correct.

Kissner did not provide any additional evidence of what was included with the CPRA response. The only evidence Kissner presented below focused on his contention that the grooming allegation was baseless. On the record and briefing before us, we cannot know if evidence of what was published does not exist or if plaintiff simply failed to provide it. Given the specificity of the complaint, we are puzzled by this lack of evidence. For example, Kissner's complaint alleges specific details about both letters, including quotes from the cover letters to both CPRA responses, and states that "Fraser testified that she . . . did not redact any part of the statement." Yet he did not provide either the first response or the alleged testimony by Fraser as evidence in response to the motion.

Even if the actual statements released with the CPRA were not available, plaintiff could have possibly presented other evidence about the publication. He could have

12

included the alleged testimony by Fraser regarding redactions, or provided other affidavits from those involved in the CPRA response process from which we might glean at least minimal evidence that the grooming allegation was included in the Statements released.  (See *Comstock, supra*, 212 Cal.App.4th at p. 951.)  He did not.  Although he alleges that the grooming allegation was not redacted, the allegations alone are not enough.  (*Monster*, *supra*, 7 Cal.5th at p. 788.)  The failure to present any evidence regarding publication of the grooming allegation is fatal to his defamation per se claim.

2.  *Other elements of defamation per se and affirmative defenses*

Defendants also argue that Kissner did not provide evidence of falsity or reputational harm and that their actions in releasing the Statements were privileged under Government Code section 820.4.  Because of the failure of proof on the issue of publication, we need not decide whether there was a sufficient factual showing on the element of falsity, nor do we need to address the issue of reputational harm or whether defendants' conduct was privileged.

## C. False Light Claim Fails.

Finally, " '[w]hen a false light claim is coupled with a defamation claim, the false light claim is essentially superfluous, and stands or falls on whether it meets the same requirements as the defamation cause of action.'  [Citation.]" (*Jackson v. Mayweather* (2017) 10 Cal.App.5th 1240, 1264.)  Therefore, we need not address this cause of action separately.  The motion should have been granted as to the false light cause of action as well.

## III.  DISPOSITION

The trial court's order on the special motion to strike is reversed.  Costs on appeal are awarded to defendants.

13

_____
Greenwood, P. J.

WE CONCUR:


_____
Grover, J.




_____
Wilson, J.




H051430 Kissner v Fraser et al.